**ACKERLEY COMMUNICATIONS OF MASSACHUSETTS, INC.,**
Plaintiff, Appellant,

v.

**CITY OF SOMERVILLE,**
Defendant, Appellee.

No. 88–1802.

United States Court of Appeals,
First Circuit.

Jan. 16, 1990.

Before SELYA, Circuit Judge,
ALDRICH and COFFIN, Senior Circuit Judges.

---

1. We address in this opinion only the fee for the work on appeal, and remand the case to the

## ORDER ON PETITION FOR COUNSEL FEES AND COSTS

COFFIN, Senior Circuit Judge.

Ackerley Communications of Massachusetts seeks an award of approximately $115,000 in attorney's fees and expenses, under 42 U.S.C. § 1988, for its largely successful appeal in a case challenging the constitutionality of a sign ordinance enacted by the City of Somerville. *See Ackerley Communications v. Somerville*, 878 F.2d 513 (1st Cir.1989).

Both parties agree that Ackerley is entitled to an award of a "reasonable attorney's fee" and expenses as a prevailing party in the underlying civil rights case. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Somerville, however, contends that it should be required to pay Ackerley only about $20,000 for its attorneys' work in the appellate phase of the case.[1]

We agree with Somerville that a "reasonable" award of fees in this case is an amount substantially less than Ackerley has requested. We set the amount at $40,000 plus expenses and court costs. That figure reflects not only our view that some specific reductions in attorney charges had to be made, *see infra*, but also a more general sense that a higher award in these circumstances would not be "reasonable." We make the following observations about how and why we reached this result:

First, the prevailing plaintiff in this case is not the typical civil rights claimant for whom a potential award of attorney's fees might have been the determining factor in the decision to seek judicial relief. *See generally City of Riverside v. Rivera*, 477 U.S. 561, 576–78, 106 S.Ct. 2686, 2695–96, 91 L.Ed.2d 466 (1986) (most victims of civil rights violations cannot afford legal counsel). In exercising our discretion with regard to this fee request, we therefore took into account that this was a case like that described by us in *United States v. Metropolitan District Commission*, 847 F.2d 12, 17 (1st Cir.1988), involving "a major litiga-

district court for a determination of the compensable costs and fees before it.

tion for a private corporate client" conducted by a large and prominent law firm. Here the corporate client obviously had decided that financial constraints must yield to an all-out effort to gain victory. In such a case, we have said,

> [T]he law firm's bill need not be swallowed whole by the client's litigation adversary just because it *is* the law firm's bill. That the firm is, as here, highly reputable and well regarded, does not change the equation. The loser cannot be left at the mercy of the winner's lawyers, bound to pay not a "reasonable" fee, but a fee on the order of what the victor—for whatever reasons—might be willing to tolerate.

*Id.* (emphasis in original).[2]

Second, we do not believe it appropriate to charge Somerville with the costs associated with Ackerley's decision to switch on appeal from competent local counsel to the more expensive and distant Washington, D.C. firm. The quality of the essential services obtained from this higher-priced representation was, in our minds, no different from that obtained at trial. We found in the appellate brief no theories or arguments that took the analysis to a level beyond that reached in the district court in any way that was of help to us. In addition, Ackerley apparently seeks to charge Somerville for significant duplication of effort resulting from this change of counsel. We mention, as only one example of this excess, the eighty hours of "wide-ranging" research claimed by attorney Jerome Marcus. As the Fourth Circuit has ruled, "[I]t is inappropriate to charge defendants with the time necessary for replacement appellate counsel to reach the level of familiarity with the case for which trial counsel had already been compensated...." *Spell v. McDaniel,* 852 F.2d 762, 768 (4th Cir. 1988).[3]

Finally, this is a case in which we feel no need to set out a precise computation of how we reduced the requested fees. Rather, for the reasons we have discussed above, we think it more appropriate here to focus not on "the number of hours logged, but [on] what was done," *see Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986). We therefore shall not attempt a comprehensive accounting of each asserted expenditure of time and funds, annotated with our view of the labor's real worth. We instead have settled upon an amount of compensation that we deem reasonable for the nature of the work performed, albeit taking into account what in fact was expended. We shall note, however, the most important of the specific factors contributing to our decision to reduce Ackerley's request by more than half:[4]

(1) Our primary reduction, as noted above, results from the clearly excessive time spent by the firm of Mayer, Brown & Platt in gearing up for, and executing, an appeal on issues that were thoroughly researched at the trial level and resulted in a

---

**2.** Although the financial status of a plaintiff may shed light on the reasonableness of the legal services provided, we obviously do not suggest that business plaintiffs are not entitled to attorney's fee awards at all. In addition to gaining personally, successful civil rights plaintiffs serve the public interest and a fee award is therefore appropriate whether or not necessary. Moreover, some fee assessment in cases of this sort is likely to encourage more thoughtful actions by governments. *See Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989) ("Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of [section 1988]."). *See also City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) ("Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in

§ 1988, over and above the value of a civil rights remedy to a particular plaintiff....'") (quoting *Hensley,* 461 U.S. at 444 n. 4, 103 S.Ct. at 1945 n. 4 (Brennan, J., concurring in part and dissenting in part)).

**3.** We do not mean to say that a prevailing plaintiff may never obtain, as part of a reasonable fee, the higher rates and expenses charged by out-of-state counsel. There should, however, be some articulable reason for imposing on a local opponent the extra expenses associated with retaining foreign counsel.

**4.** Although we did not perform a line-by-line review of Ackerley's request, our starting point in calculating an appropriate fee was the "lodestar" approach of determining the total number of hours reasonably spent multiplied by a reasonable hourly rate.

comprehensive opinion from the district court. Although the legal issues were difficult, the factual background was not unduly complex and much of the relevant caselaw had been set forth by the district court.

The extraordinary time spent cannot be justified, as Ackerley argues, by saying "[t]his collegial method of staffing matters is a frequent practice in the Appellate Group ..., which specializes in the briefing and argument of complex appeals...." "Collegial" can be a euphemism for redundancy. For all work involving canvassing the record, research, and preparation of briefs, excluding the work of seven or more paralegals, four attorneys at Mayer, Brown & Platt and one local counsel at a Boston law firm logged approximately 500 hours. For work related to oral argument, the four attorneys working for Ackerley logged more than 70 hours. This represents a total commitment of one lawyer, working a 40–hour week, for 14 weeks, and demonstrates that, as against savings in assigning various grades of work, there comes a time of diminishing returns.[5]

Moreover, firms that would justify high hourly charges presuppose particular familiarity and expertise, which should reduce the time needed to do the work. We can only speculate that the inordinate amount of time given to these tasks, in light of counsels' capability and the substantial work that preceded the appeal, stemmed from "the heat and excitement of litigating an interesting First Amendment case," *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 953 (1st Cir.1984).

On the subject of "collegiality," as well as skill, we would have thought that in addition to reploughing the same fields, some member of the group might have thought of the ground on which we ultimately decided in their favor. Even if it should be thought that our constitutional analysis was so far out that it could be said that we wrongly embraced it—to Ackerley's good fortune—surely it is not so far out that counsel should not at least have visualized and argued it.

(2) Nearly $7,000 in costs identified by Ackerley's lawyers related to a motion for injunction pending appeal in connection with Somerville's announcement in May 1989 that it would assess fines if Ackerley did not remove its signs within 30 days. That motion was filed and decided by the district court, and should be included in the fee application considered by that court.

(3) Ackerley has failed to provide record support for its requested hourly rates for its most highly paid attorneys, particularly Frey and Geller. "[T]he reasonableness of hourly charges depends on prevailing rates in the community for comparably qualified attorneys." *Metropolitan District Commission,* 847 F.2d at 19 (citing *Blum v. Stenson,* 465 U.S. 886, 895–96, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984)). Although attorneys Frey and Geller ordinarily may bill clients at an hourly rate of $275, there is no evidence in this record that this is an appropriate rate in the Boston legal community. *See id.* ("A law firm's customary schedule of charges, though entitled to consideration, is not dispositive of the issue...."). Moreover, in light of our view that the switch in law firms was purely a judgment call by the client, we see no reason to assess Somerville for so high an hourly rate when Ackerley's trial attorney charged only $150 per hour.

Nevertheless, we do take note that some major firms in Boston are reported to have billing rates for senior partners at significantly higher levels. Consequently, we have made no across-the-board reduction in hourly rates, preferring to make an adjust-

---

**5.** Although we recognize that comparisons between the number of hours spent by the attorneys for different parties may tell little about the quality of the work involved, we nevertheless think it worth noting the dramatic contrast that exists here for work that appeared at least roughly comparable: Somerville's one private firm attorney logged about 110 hours for work related to the briefs and its two counsel logged 34.6 hours for work related to oral argument. The bill for oral argument was reduced by $750 (or approximately seven hours) because, according to Somerville, counsel "felt he had spent too much time in preparing the case for oral argument."

ment in hours to reflect the time needed by the most expert counsel.

(4) We allowed what we deem a reasonable fee for the appellate work done on the takings claim. We believe that issue was sufficiently related to Ackerley's successful claim to justify compensation under *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983) (claims are reasonably related where they "involve a common core of facts" *or* are "based on related legal theories"). *See also Smith v. Robinson*, 468 U.S. 992, 1006–07 & n. 10, 104 S.Ct. 3457, 3464–65 & n. 10, 82 L.Ed.2d 746 (1984); *Garrity v. Sununu*, 752 F.2d 727, 734 (1st Cir.1984). *Accord Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir.1987) (claims "arising out of the same course of conduct[ ] share a common core of facts and thus are related for purposes of Section 1988"); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir.1983) (same). Although the takings claim consumed approximately one-fourth of Ackerley's brief, we conclude that a reasonable fee for the work done on that issue is approximately $5,000.

Accordingly, we hold that plaintiffs are entitled to a total of $40,000 in attorney's fees, $3,500 of which is attributable to the work of attorney Berman and the remainder to the work of Mayer, Brown & Platt. An additional amount of $5,500 in expenses is allowed, $900 of which is allocable to Posternak, Blankstein & Lund and the remainder to Mayer, Brown & Platt. We have disallowed claims for what we deem excessive photocopying, computer research and travel costs. Ackerley may recover in addition its court costs associated with the appeal. It is not entitled to fees for the work involved in this request.

*So ordered. The case is remanded to the district court for further proceedings.*