USCA1 Opinion

 

 November 25, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____________________ No. 92-1043 DONALD PEARSON, ET AL., Plaintiffs, Appellants, v. MICHAEL FAIR, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella and Selya, Circuit Judges, ______________ and Zobel,* District Judge. ______________ _____________________ Joseph D. Halpern, with whom David R. Geiger, Michele A. __________________ ________________ ___________ Whitham and Foley, Hoag & Eliot, were on brief for appellants. _______ ___________________ Abbe L. Ross, Assistant Attorney General, Criminal Bureau, _____________ with whom Scott Harshbarger, Attorney General, was on brief for _________________ appellees. ____________________ ____________________ ____________________ * Of the District of Massachusetts, sitting by designation. TORRUELLA, Circuit Judge. In this appeal, we review ______________ whether the district court erred in finding that plaintiffs -- six inmates who are committed as sexually dangerous persons1 at the Treatment Center for sexually dangerous persons at the Massachusetts Correctional Institute in Bridgewater (the Treatment Center) -- were not "prevailing parties" entitled to attorney's fees under 42 U.S.C. 1988. I I Since 1974, isolation of inmates at the Treatment Center has been governed by a Consent Decree and a Supplemental Consent Decree entered by Judge Wyzanski in King v. Greenblatt, ____ __________ C.A. No. 72-788-MA.2 See generally King v. Greenblatt, 489 F. ______________ ____ __________ Supp. 105 (D.Mass. 1980). The Supplemental Consent Decree provided inter alia _____ ____ 1. Defendants [the Commissioner of the Department of Mental Health; the correctional officers at the Treatment Center and the Superintendent of the Correctional Institute at Bridgewater] shall not use or permit the use of discipline or punishment . . . . 2. To the extent patients at said Treatment Center are sequestered or segregated by themselves in rooms or cells used at least in part to isolate patients for behavior defendants deem inappropriate and unacceptable, ____________________ 1 See Mass. Gen. L. ch. 123A, 1-9. ___ 2 The Supplemental Consent Decree was entered eight days after the original Consent Decree. The facts of this case have been fully described by this court on two previous occasions. See Pearson v. Fair, 935 F.2d 401 ___ _______ ____ (1st Cir. 1991) (Pearson II); Pearson v. Fair, 808 F.2d 163 (1st _______ _______ ____ Cir. 1986) (Pearson I). We only relate the facts pertinent to _______ this appeal. (a) such sequestering or segregation shall be effected in conformity with minimum standards of procedural due process, including notice of the kinds of behavior which may lead to sequestering, notice of particular charges or complaints of such behavior, an opportunity to be heard and confront such charges or complaints and present evidence in rebuttal, a hearing before persons other than the complainant, and notice and a written record of disposition sufficient to permit administrative review; (b) such sequestering or segregation shall be in locations which conform to minimum standards of human decency . . . . The consent decree did not require the defendants to adhere to specific or detailed policies governing isolation at the Treatment Center. However, defendants adopted certain isolation policies and procedures, none of which were specifically ordered or approved by the district court. Pearson I, 808 F.2d at 165. _______ A. Pearson I A. Pearson I _______ In December of 1981, six inmates3 at the Treatment Center filed a pro se civil complaint seeking to have ___ __ defendants4 held in contempt of court for their alleged violations of the King decrees. In January of 1981, the ____ plaintiffs, represented by court-appointed counsel, filed an ____________________ 3 The inmates were Donald Pearson, Albert Gagne, Joseph Johnson, Lynwode Paquette, Michael Kelley and Francis O'Connor. 4 The defendants were the Commissioner of the Department of Correction of the Commonwealth of Massachusetts, the Commissioner of the Department of Mental Health of the Commonwealth of Massachusetts, the Superintendent of the Massachusetts Correctional Institute at Bridgewater, the Administrator of the Treatment Center and the Supervisor of the Treatment Center. -3- amended complaint seeking as a matter of federal law the imposition of detailed policies governing isolation at the Treatment Center and injunctive relief requiring the defendants to comply with the King consent decrees. The amended complaint ____ also requested that the defendants be found in contempt and sought related sanctions. From 1982 to 1986, plaintiffs brought various motions seeking, among other things, that defendants be bound to follow their own isolation policies and the enforcement of the terms of the King consent decrees. Plaintiffs also claimed that ____ defendants' isolation policies and procedures violated the equal protection and due process clauses of the United States Constitution because they failed to comply with Massachusetts' seclusion and restraint law.5 As a result of the request for injunctive relief, defendants were forced to comply with the stipulation in the King consent decrees which provided for a ____ hearing before continuing the sequestration of patients.6 ____________________ 5 Mass. Gen. L. ch. 123, 21. 6 This initial injunctive relief was obtained because defendants sequestered Albert Gagne, beginning on September 30, 1982. On October 22, 1982, plaintiffs' filed a motion seeking a temporary restraining order and a preliminary injunction to prevent defendants from continuing to sequester plaintiff Gagne. On October 25, the district court denied the motion for a temporary restraining order, but referred the motion for a preliminary injunction to a Magistrate. Following a Magistrate's Report recommending that plaintiffs' motion be granted in part since defendants were violating their own policies, defendants granted plaintiff Gagne a hearing before continuing his sequestration. On September 12, 1983, the plaintiffs brought a new motion seeking a finding of contempt, sanctions and a preliminary injunction. After numerous evidentiary proceedings, a Magistrate -4- On November 19, 1985, following extensive settlement discussions between the parties and a suggestion by the district court at a status conference, defendants filed "Revised Policies and Procedures" (Revised Policies) for the isolation of inmates at the Treatment Center. On April 4, 1986, the district court issued a final order ordering inter alia that defendants in all future _____ ____ isolations at the Treatment Center comply with the King consent ____ decrees and the Revised Policies. Defendants appealed. In Pearson I, we vacated the district court's order. We concluded _______ that the district court had disposed of the merits of the controversy without the benefit of an evidentiary hearing and had failed to make the necessary findings to conclude that, as a matter of federal law, the defendants were bound by the Revised Policies. The case was remanded and reassigned to Judge Young.7 B. Pearson II B. Pearson II _______ Between July and December 1988, plaintiffs sought preliminary injunctive relief against the repeated isolations of plaintiff Calvin Tate. On July 12, 1988, plaintiffs sought preliminary ____________________ recommended the denial of plaintiffs' motion. Other hearings and further motions followed which are not relevant here. As explained in more detail above, on April 4, 1986, the district court approved the Magistrate's Report and Recommendation, and entered an order binding the defendants to their Revised Policies. 7 We note that the district court granted an interim award of attorneys' fees to plaintiffs in the amount of $7,379.12 on February 4, 1988. -5- injunctive relief seeking plaintiff Tate's immediate release on the ground that he was sequestered in a manner which violated the King decrees and the Revised Policies. On July 28, 1988, Judge ____ Young denied that motion without prejudice to its renewal after August 15, 1988, if plaintiff Tate had not been released from seclusion by that time. Although Judge Young found that plaintiff Tate had "shown a reasonable likelihood of success in proving that the Revised Policies and Procedures embody the procedural due process standards to which Tate is entitled under the King decrees," and that the defendants were violating the ____ King decrees, he concluded that the public interest -- the ____ defendants' good faith belief that plaintiff Tate was a danger to himself and others -- outweighed the injuries plaintiff Tate suffered from sequestration. It was not long before plaintiffs returned to the district court. On August 17, 1988, they renewed their motion for injunctive relief seeking the release of plaintiff Tate from isolation and that the defendants refrain from sequestering any patient at the Treatment Center except in compliance with the King decrees and the Revised Policies. Plaintiffs further ____ requested inter alia that the district court order _____ ____ (1) the defendants to give a patient facing sequestration one hour prior written notice detailing the alleged behavior that led to the sequestration sanction; (2) that any person on the Special Clinical Staff Conference ("SCSC") [the Committee which made the decisions to isolate inmates] be a licensed -6- psychiatrist; (3) that the treatment plan for sequestered patients specify why (i) the patient posed "a clear and present danger to himself or others," (ii) sequestration is an clinically appropriate form of treatment and (iii) no other less restrictive form of treatment is appropriate. In response to plaintiffs' motion, Judge Young held an emergency hearing on August 18, 1988. Judge Young concluded that the order of July 22, 1988 -- finding that plaintiffs had demonstrated a likelihood of success in proving violations of the King decrees ____ by defendants -- should stand. More importantly, Judge Young issued an injunction to take effect on August 26, 1988, ordering defendants (1) to refrain from sequestering any patient except in compliance with the King consent decrees and the Revised ____ Policies and Procedures; (2) to include a licensed psychologist in the determination of the SCSC reviewing any sequestration and such treatment review shall indicate the treatment to be afforded [to] the person sequestered and how the sequestration contributes to the treatment. Defendants, however, chose not to sit by idly and watch the August 26 injunction bind them to their Revised Policies. On August 24, 1988, two days before the injunction would be effective, the defendants released plaintiff Tate from sequestration and they issued a document titled "Isolation Policy and Procedure" ("Isolation Policy"), which expressly repealed the Revised Policies. They notified the district court and -7- plaintiffs on August 25. The Isolation Policy constituted a broad expansion of defendants' discretion to sequester patients. A few illustrations suffice: (1) the defendants purported to transfer from the SCSC to the Administrator of the Treatment Center and his Assistant the authority to make final determinations regarding isolation; (2) under the Policy, a valid clinical reason to continue the isolation was a determination by the initial isolation clinician8 that the patient would interfere "with the orderly administration of and treatment goals of the _______ ______________ Treatment Center"; and (3) the Administrator had the power to suspend the Isolation Policy or parts thereof, if in his opinion there existed "concerns for the safety of patients and staff at the Treatment Center, and/or concerns for the safe administration ____ ______________ of the facility . . . ." (emphasis added).9 On August 24, 1988, the same date defendants unilaterally replaced the Revised Policies, plaintiffs filed a motion requesting the partial modification of the preliminary injunction that was to go into effect on August 26. Plaintiffs requested that the district court (1) specify that any further clinical review conducted by defendants concerning ____________________ 8 Initial Isolation Clinician was defined as "[a] member of the [Department of Mental Health] clinical staff designated by the Administrator to evaluate a patient who has been placed in isolation." 9 In a post-trial opinion, the district court concluded that "the unilateral adoption of the Isolation Policy violated the consent decrees . . ." Opinion of August 28, 1989, at 98. -8- plaintiff Tate shall comply with the King ____ consent decrees and the defendants' own Revised Policies and Procedures; (2) delete the provision in the injunction allowing defendants to sequester plaintiff Tate by the unilateral decision of the Administrator; (3) specify that no appeal may be taken from a treatment plan except by the patient and the appeal must be decided solely upon materials in the record. On August 26, 1988, Judge Young issued an order modifying the preliminary injunction. Judge Young bound the defendants to the King consent decrees and to the newly ____ promulgated Isolation Policy, except that he modified the Policy so that (1) only qualified psychiatrists and psychologists may serve as Initial Isolation Clinicians and Isolation Review Clinicians; and (2) the defendants were barred from suspending the Isolation Policy, even in an emergency. Plaintiffs presented their objections to the Isolation Policy on August 30, 1988 and requested that the August 26, 1988 preliminary injunction be further modified (1) to restrict the use of isolation to inmates presenting a likelihood of serious harm to himself or others; (2) to allow administrative modification of a treatment plan only by a "legitimate clinician on legitimate clinical grounds only"; and (3) to measure the time requirements in the Policy by ordinary calendar days, rather than "working days." On September 22, 1988, at a status conference, Judge Young ordered the parties to meet and work out more precise language for the Isolation Policy. More significantly, Judge -9- Young adopted two of plaintiffs' three suggested amendments: he ordered that modification of an initial clinical decision requiring isolation be made only with the written concurrence of a psychiatrist or psychologist, and he amended the definition of "days" as used in the Policy to mean "all days, not just workdays." On November 4, 1988, plaintiffs filed a motion for modification of the preliminary injunction in response to another allegedly unlawful isolation of plaintiff Tate. They requested that the district court issue an order further modifying defendants' Isolation Policy by: (1) defining "isolation," as used in the Policy, to mean the confinement of a patient in any place of seclusion, other than in his room for the night or for a security count; (2) permitting the isolation of a patient only under emergency circumstances, such as the patient's extreme physical violence, attempted suicide or serious disruption of the therapeutic environment, or conduct which clearly demonstrates the serious and imminent threat of such behavior. On November 21, 1988, following a hearing held three days earlier, Judge Young entered an order modifying the preliminary injunction of August 26, 1988 by "[d]efining 'isolation,' as used in the Policy, to mean the confinement of a patient in the Crisis Unit or any other place within the institution other than the patient's room for more than eight hours per day." In addition, Judge Young adopted plaintiffs' proposed modification that isolation be permitted only in "emergency situations" and -10- plaintiffs' definition of "emergency situations." On January 18, 1989, Judge Young recused himself and the case was reassigned to Judge Mazzone. The case went to trial on March 16, 1989.10 At trial, plaintiffs asserted that the equal protection clause of the Constitution required defendants to comply with Massachusetts' seclusion and restraint law applicable to civilly committed mental health patients.11 Plaintiffs also claimed that the defendants engaged in a pattern and practice of violating the King decrees, that the defendants' ____ sequestration practices violated procedural due process and that the conditions of confinement failed to comport with minimum standards of human decency. On August 28, 1989, Judge Mazzone dismissed the amended complaint and entered judgment for defendants. In a thoughtful and comprehensive opinion, Judge Mazzone concluded that the plaintiffs had not succeeded on any of their claims at trial. Judge Mazzone then entered an order vacating the Isolation Policy and staying Judge Young's preliminary injunctions until such time as the isolation problem could be comprehensively addressed in the context of the King case (which had been reopened by Judge ____ Young). Following their loss at trial, plaintiffs filed a ____________________ 10 The Pearson case was consolidated for trial with Langton v. _______ _______ Johnson, 928 F.2d 1206 (1st Cir. 1991). Langton involved a broad _______ _______ challenge to the defendants' treatment practices for the sexually dangerous persons interned in the Treatment Center. 11 See Mass. Gen. L. ch. 123, 21. ___ -11- motion for attorneys' fees and costs in the amount of $658,452.92.12 On January 31, 1990, the district court declined to award plaintiffs the requested $673,558.03. Judge Mazzone found that there has been enormous improvement in physical facilities and in therapeutic treatments, but I cannot attribute those achievements to present counsels' efforts in any meaningful way . . . . Similarly, it was the prescient and wise intervention of Judge Young with regard to the sequestration practice at the Treatment Center which has resulted in the interim policy now in effect . . . neither of the plaintiffs' counsel took part in the formulation of the final, interim policy, or aided in its drafting. Judge Young did not adopt the suggestions of counsel, but was required, under pressure of time, to forge a sensible and workable course between the positions taken by both sides. The district court, however, found that plaintiffs had "achieved a minor, but recognizable change in the parties' relationship over the course of the eight years of litigation" and awarded plaintiffs a limited award of $69,000 in attorneys' fees and costs. Plaintiffs appealed the entering of judgment for the defendants and the award of attorneys' fees. Defendants cross- appealed the attorneys' fees award. In Pearson II, 935 F.2d 401 (1st Cir. 1991), we _______ affirmed the district court's judgment for defendants on the merits, but vacated the grant of a "limited" award of attorneys' fees. We concluded that the district court had failed to explain ____________________ 12 Plaintiffs claimed fees for the entire litigation deducting only the prior interim award of $7,379.12 -12- clearly two issues: (1) whether plaintiffs' lawsuit had a "catalytic effect" in bringing about a change in defendants' isolation policies; and (2), if so, what method was used by the district court to award attorneys' fees. Id. at 416. ___ On remand, the plaintiffs filed a renewed motion for attorneys' fees in the amount of $736,456.03. The district court denied plaintiffs' motion and refused to award any fees. Plaintiffs appeal from this order. For the reasons that follow, we vacate. II II The Fees Act, 42 U.S.C. 1988, provides in pertinent part, that in actions brought under the Civil Rights Act, 42 U.S.C. 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), the _______ _________ Supreme Court defined a "prevailing party" as one who "succeed(s) on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." See also Texas ________ _____ Teachers Ass'n v. Garland School Dist., 489 U.S. 782, 792-93 _______________ _____________________ (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."). Under Section 1988, a litigant may be considered a prevailing party for attorneys' fees purposes if the litigant -13- either (1) succeeds "on a significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit" or (2) even absent success on the merits, "[if the litigant's suit] had a catalytic effect in bringing about a desired result." Langton v. Johnston, 928 F.2d 1206, 1224 (1st _______ ________ Cir. 1991) (citing Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st ______ ________ Cir. 1978) and Guglietti v. Secretary of HHS, 900 F.2d 397, 398 _________ ________________ (1st Cir. 1990)). In Pearson II, we held that plaintiffs here _______ were not prevailing parties in the classic sense because they "did not win on any significant issue in the current litigation and no judgment was entered in their favor." 935 F.2d at 415 (citation omitted).13 Nonetheless, we remanded the case after determining that a substantial question lingered as to whether plaintiffs' lawsuit had a catalytic effect in bringing about the modified Isolation Policy. Id. ___ On remand, the district court found that appellants' contribution to bringing about the modified Isolationist policy was de minimis and thus did not warrant an award of fees.14 __ _______ ____________________ 13 In a footnote of their brief, plaintiffs argue that they are prevailing parties in the classic sense of achieving victory in the litigation itself. We decline plaintiffs' invitation to reconsider our earlier holding. See, e.g., U.S. v. Rivera- ___ ____ ____ _______ Mart nez, 931 F.2d 148, 150 (1st Cir. 1991) ("[T]he phrase 'law ________ of the case' signifies, in broad outline, that a decision of an appellate tribunal on a particular issue, unless vacated or set aside, governs the issue during all subsequent stages of the litigation in the nisi prius court, and thereafter on any further ____ _____ appeal."). 14 The district court held: Having reviewed the voluminous record in preparation for the trials, having -14- This court reviews the district court's determination of attorneys' fees under 42 U.S.C. 1988 for abuse of discretion. See generally Domegan v. Ponte, No. 91-1625, slip _____________ _______ _____ op. at 11-12 (1st Cir. Aug. 10, 1992); Langton, 928 F.2d at 1225. _______ Having thoroughly scrutinized the record in this case, we cannot agree with the district court's conclusion that the achievements of plaintiffs' suit were de minimis. __ _______ We have held that "[t]he catalyst test 'applies to plaintiffs who have succeeded in achieving favorable results because of the filing of their 1983 claim, but have not had a final judgment on the merits entered in their favor.'" Langton, _______ 928 F.2d at 1225 (citing Exeter-West Greenwich Regional School ______________________________________ Dist. v. Pontarelli, 788 F.2d 47, 52 (1st Cir. 1986)). Under the _____ __________ catalyst test, plaintiffs must prove that their lawsuit caused the sought-after improvements (the causation component) and the improvements were of more than "minor significance" (the materiality component). Langton, 928 F.2d at 1224-25 (quoting _______ ____________________ presided at the trials and having combed the same record to write a lengthy opinion, I continue to believe the early and intense involvement by Judge Wyzanski and Judge Garrity and the continued involvement of other judges of this court, especially Judge Young, brought about the improvement in physical facilities and therapeutic treatment, and the operating stability that I found existed in my Opinion, August 28, 1989. _______ An extended discussion of this difficult issue would serve no purpose. I simply cannot make the concrete findings necessary in either case. Memorandum and Order, November 20, 1991. ____________________ -15- Texas Teachers Ass'n, 489 U.S. at 792). We address below each ____________________ requirement of the catalyst test. A. Causation A. Causation _________ Under the causation prong of the catalyst theory, plaintiffs must show that their lawsuit was a "necessary and important factor in achieving the improvements" in the isolation policies and practices at the Treatment Center. Nadeau, 581 F.2d ______ at 281. The district court concluded that plaintiffs' contributions to the sequestration policies was insignificant because, in its view, "neither of the plaintiffs' counsel took part in the formation of the final, interim policy, or aided in its drafting." However, the facts underlying the evolution of Judge Young's injunctive orders contradict this conclusion. The long and tortuous history of this litigation demonstrates that plaintiffs' attempt to obtain relief during the summer and fall of 1988 caused the district court to order the modification of defendants' isolation policies. In Nadeau, we pointed out that in determining whether ______ plaintiffs' lawsuit caused the defendant to act, the chronology of events was an important factor to consider.15 581 F.2d at 281. An examination of the chronology leading to the final Isolation Policy yields only one conclusion: the terms of Judge Young's orders were in direct response to plaintiffs' motions and the district court orders adopted the substance if not the form ____________________ 15 We also emphasized that it was not a decisive factor and nothing in this opinion modifies that holding. -16- of most of plaintiffs' suggested modifications. Judge Young's final order of November 21, 1988, adopted verbatim the following terms proposed by plaintiffs: (1) ________ defendants were bound by a detailed isolation policy enforceable as a matter of federal law; (2) the term "days" is defined as "calendar days," not "working days"; (3) isolation is only permitted in emergency situations; and (4) "emergency situations" included only three defined categories. Additionally, the district court adopted plaintiffs' suggested definition of "isolation," adding only the requirement that confinement be for more than eight hours. Two further modifications proposed by plaintiffs were adopted in large part by the district court: administrative modification of the treatment plan was prohibited unless a psychiatrist concurred in writing, and only qualified psychiatrists and psychologists may serve as Initial Isolation Clinicians and Isolation Review Clinicians. In sum, Judge Young issued various preliminary injunctions in response to plaintiffs' motions seeking that defendants be bound to the King decrees and the Revised Policies. ____ In the end, it was clear that plaintiffs' lawsuit triggered the district court decision to bind defendants to the King decrees ____ and to modify the Isolation Policy to comply with the due process rights of the inmates. B. Materiality B. Materiality ___________ Under the materiality prong of the catalyst theory, the plaintiffs must show that whatever changes their lawsuit caused -17- at the Treatment Center were not de minimis. Langton, 928 F.2d __ _______ _______ at 1225. At a minimum, "plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Texas Teachers Ass'n, 489 ____________________ U.S. at 792. In Texas Teachers Ass'n, the Supreme Court held that _____________________ the key inquiry under Section 1988 is whether "the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the lawsuit . . .'," 489 U.S. at 791-92 (citing Nadeau, 581 F.2d at ______ 278-79). In ascertaining eligibility for a fee award, the degree of plaintiffs' success is relevant only to the quantity of a reasonable fee. Id. at 790. In the present case, the district ___ court held without explanation that plaintiffs lawsuit was of "minor significance given the entire record." The district court apparently measured plaintiffs' achievements with reference to the overall goals of plaintiffs in the other consolidated case. See Langton, 928 F.2d at 1212 (affirming district court's finding ___ _______ that plaintiffs failed to carry their burden that defendants' therapeutic treatment of inmates at the Treatment Center violated the United States Constitution or two prior consent decrees). A close review of plaintiffs' achievements -- the injunctive relief obtained to bind defendants to the Revised Policies and to modify the Isolation Policy -- leaves us with the firm conviction that the district court's outright denial of attorneys' fees is erroneous. -18- The central change in the legal relationship -- as a matter of federal law the defendants are now bound to follow the modified isolation policies and procedures -- was largely, if not solely, brought as a result of plaintiffs' efforts to obtain injunctive relief. Courts have routinely held that substantive injunctive relief is not de minimis and is a proper basis for an __ _______ award of attorneys' fees. See, e.g., Crowder v. Housing ___ ____ _______ _______ Authority of Atlanta, 908 F.2d 843, 849 (11th Cir. 1990) ______________________ (district court abused its discretion in denying fees when it had issued permanent injunction ordering housing authorities to comply with certain procedures and guarantees); Rogers v. Okin, ______ ____ 821 F.2d 22, 25 (1st Cir. 1987), cert. denied, 484 U.S. 1010 _____ ______ (1988) (fees proper when plaintiffs obtained injunctive relief establishing right of committed mental patients not to be forcibly medicated or secluded, except in clearly defined emergency situations). Indeed, before plaintiffs sued, defendants were not complying with the King consent decrees or even their own Revised ____ Policies. Although an injunction that merely preserves the status quo may constitute de minimis relief, in this case the __ _______ injunctions entered by the district court repeatedly "changed the legal relationship" between the parties to the benefit of plaintiffs. Texas Teachers Ass'n, 489 U.S. at 792. Defendants ____________________ are now as a matter of federal law bound to a modified Isolation Policy. In sum, plaintiffs' lawsuit vindicated the due process -19- rights of the inmates under the King regime by clarifying the ____ King decrees and forcing defendants to adopt an Isolation Policy ____ in compliance with the decrees. III III This is the third time this case has been appealed and the second appeal involving a dispute over attorneys' fees. We see no need for a fourth remand, particularly since plaintiffs have included in the appendix a lengthy computer printout which reflects time charges for counsel's work and disbursements itemized on a line by line basis and affidavits in support thereof. De Jes s v. Banco Popular de Puerto Rico, 951 F.2d 3, 6 ________ ____________________________ (1st Cir. 1991); Jacobs v. Mancuso, 825 F.2d 559, 562 (1st Cir. ______ _______ 1987); Rogers, 821 F.2d at 31. ______ Plaintiffs admit that they obtained "less than complete success," but they argue that the injunctive relief gained is "sufficient to warrant an award of fees based upon the time spent on all aspects of the case." Plaintiffs' Reply Brief at 18. ___ After deducting a few hours found redundant or otherwise unnecessary, plaintiffs submitted a request for an award of fees in the amount of $736,456.03. Defendants have adopted an "all or nothing" approach in their opposition to plaintiffs' fee application. They essentially assert that plaintiffs' fee request is grossly exaggerated and since "no attempt was made to segregate the amount of time spent on any particular claim, total disallowance is justified." Appellees' Brief at 26. We have examined the -20- record carefully and conclude that defendants' opposition lacks merit. In fact, the district court arguably encouraged plaintiffs to file a submission for time spent on all aspects of the case when it denied a motion filed by defendants requesting the court to order plaintiffs to segregate. Cf. Domegan v. __ _______ Ponte, No. 91-1625, slip op. at 45 n.35 (1st Cir. Aug. 10, 1992) _____ ("failure [of fee target] to present evidence that flat rates approved by the district court were unreasonable means that [fee target] cannot prevail on their 'flat rate' challenge") (emphasis _______ in original); Rogers, 821 F.2d at 30 ("[T]he realities of fee ______ award reviews compel those who would object to such awards on appeal on the basis of time spent to select priority targets and marshal the facts as effectively as possible."). The starting point in determining an award of attorneys' fees under Section 1988 is that it must be "reasonable." Hensley v. Eckerhart, 461 U.S. 424 (1983). In _______ _________ calculating a reasonable attorneys' fee, "the most critical factor is the degree of success obtained." Id. at 436; Texas ___ _____ Teachers Ass'n, 489 U.S. at 789-90. If the plaintiff has failed ______________ to prevail on a claim unrelated to the successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Application of these general principles leads us to set the amount of fees at $110,000 including expenses and costs.16 ____________________ 16 This figure represents approximately fifteen percent of the total award claimed. -21- We have not hesitated to recognize that there are cases which do not require this court to set forth an exacting, line- by-line explanation of our conclusion that the requested award of attorneys' fees must be reduced. Ackerley Communications v. City _______________________ ____ of Sommerville, 901 F.2d 170 (1st Cir. 1990); Hart v. Bourque, _______________ ____ _______ 798 F.2d 519 (1st Cir. 1986). This is such a case. This amount reflects not only our determination that miscellaneous reductions in the total award requested was necessary "but also a more general sense that a higher award in these circumstances would not be 'reasonable.'" Ackerley Communications, 901 F.2d at 170. _______________________ We explain the general factors upon which we relied to reduce the lodestar figure. First, and principally, plaintiffs only achieved limited success on their claims. They admit as much. See Foley ___ _____ v. City of Lowell, 948 F.2d 10, 19 (1st Cir. 1991) (paring award ______________ to reflect degree of actual success). Plaintiffs' assertion that they are entitled to compensation for all hours spent on the case for proving the necessity to maintain the modified Isolation Policy proves too much. Indeed, we attach some significance to a pre-trial motion filed by plaintiffs seeking an interim award of fees for counsel's work in obtaining the injunctive relief.17 ____________________ 17 The interim fee request was submitted on January 17, 1989, and it sought an award of fees for counsel's work in obtaining the injunctive relief in an approximate amount of $105,000 at current rates. As grounds for the award, plaintiffs pointed to their success in obtaining the preliminary injunctions of August 18 and August 26, 1988 and the subsequent modification of the injunctions on August 20, September 22 and November 18, 1988. We emphasize that plaintiffs subsequently proved at trial -22- The main focus of the dispute at trial was plaintiffs' claims that the defendants violated the equal protection and due process clauses in failing to afford Treatment Center inmates the legal rights accorded to other mental health patients in the Commonwealth, including the protections of the Commonwealth's restraint and seclusion statute.18 The district court determined that plaintiffs had failed to prove by a preponderance of the evidence that the restraint and seclusion statute should apply to the Treatment Center and that the defendants had engaged in a pattern and practice of violating the King decrees. See ____ ___ generally Pearson II, 935 F.2d 401 (1st Cir. 1991). _________ _______ Second, the level of limited success achieved by plaintiffs demonstrates that a substantial number of hours spent on factual discovery and legal research was devoted to matters on which the plaintiffs did not prevail. To a large extent, plaintiffs' counsel overreached in their constitutional claims and by going to trial, plaintiffs did not serve "'the public interest by vindicating important constitutional rights.'" City ____ of Riverside v. Rivera, 477 U.S. 561, 572 (1985) (citation _____________ ______ omitted). Although it would be impractical, if not impossible, to separate the time spent on the due process and equal protection claims -- particularly since the factual issues are closely interrelated -- we conclude that the award must be reduced to reflect the limited success achieved. See, e.g., ___ ____ ____________________ that the Isolation Policy violated the King decrees. ____ 18 See Mass. Gen. L. ch. 123, 21. ___ -23- Domegan v. Ponte, supra (affirming district court's decision to _______ _____ _____ award only half of requested attorneys' fees, although plaintiffs' counsel sought compensation for only one third of time spent on case). Finally, we have reviewed the fee petition and find miscellaneous billing entries that reflect hours not reasonably expended on the litigation. Hensley, 461 U.S. at 588. _______ Accordingly, we have applied our "billing judgment" to disallow unreasonable claims.19 We have also reduced the number of hours claimed to adjust for overstaffing. Exhibit B of plaintiffs' motion shows that approximately 15 lawyers billed hours for work performed on this case. This is an unreasonable number of lawyers. Courts "should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." Lipsett v. Blanco, No. 91-2152, slip. op. at 8 (1st _______ ______ Cir. Sept. 23, 1992). It is conceivable that a civil rights litigation may be so complex and novel that a plaintiff may have to retain more than 15 skilled civil rights lawyers to succeed. But this is not such a case. At the time the complaint was filed, defendants were in theory bound by the King consent ____ decrees and they had promulgated policies which on their face complied with the decrees. In simple terms, the vindication of plaintiffs' rights was to a large extent a matter of clarifying ____________________ 19 For example, plaintiffs' counsel seeks $15,105.11 for the preparation of the first motion for award of attorneys' fees. -24- the consent decrees, which did not require overreaching to assert tenuous constitutional claims.20 Likewise, the high hourly rates billed by plaintiffs' law firm "presuppose particular familiarity and expertise, which should reduce" the number of attorneys needed to litigate. Cf. __ Ackerley, 901 F.2d at 172; see also Foley, 948 F.2d at 20. This ________ ________ _____ is particularly so here where plaintiffs' two lead counsel conducted most, if not all, stages of the litigation. Ultimately, plaintiffs have failed to articulate a compelling reason as to why defendants should be taxed for the duplicative costs of associating a horde of attorneys with this dispute. Finally, plaintiffs' counsel, by overreaching (continually pushing for full fees in the face of very limited success), have forfeited any claim on appellate generosity. C.f., e.g., Lewis ____ ____ _____ v. Kendrick, 944 F.2d 949 (1st Cir. 1991). Considering this ________ history, no further award of fees or costs shall be granted with respect to this appeal. Vacated and remanded for entry of judgment consistent _______________________________________________________ with this opinion. _________________ ____________________ 20 As the district court noted, plaintiffs' equal protection argument flew in the face of this court's decision in Doe v. ___ Gaughan, 808 F.2d 871 (1st Cir. 1986). 1989 Opinion at 58. In _______ Doe, we held that "[t]here is no constitutional requirement . . . ___ that all mental patients in state-run hospitals receive the same rights or care." Id. at 881 (citation omitted). ___ -25-