Prudencio VELÁZQUEZ
HERNÁNDEZ, et al.

v.

José L. MORALES, et al.

Civ. No. 88–1578(PG).

United States District Court,
D. Puerto Rico.

Dec. 24, 1992.

---

José F. and Eric M. Quetglas–Jordán, San Juan, PR, for plaintiffs.

Hjalmar Flax, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

PÉREZ–GIMÉNEZ, District Judge.

On July 2, 1992, the jury in this section 1983 action awarded the deceased's estate $500,000.00 ($250,000.00 in compensatory damages and $250,000.00 in punitive damages) for the deceased's pain and suffering, a consequence of his bodily bashing by several penal guards at the Río Piedras State Penitentiary in September of 1987. The jury also awarded the deceased's mother $500,000.00 in compensatory damages under her pendent tort cause of action. Presently before the Court is plaintiffs' petition for attorney fees under 42 U.S.C. § 1988. For the services of Attorney Eric Quetglas Jordán plaintiffs request an award of $31,362.50; for those of his brother, José F. Quetglas Jordán, an award of $47,953.10; and, for those of their father, José F. Quetglas Alvarez, an award of $15,-242.50.[1] These sums add to a total of $94,558.10. As expected, the defendants, represented by the Commonwealth's Department of Justice, oppose the granting of any such award. In the alternative, they request that it be reduced considerably. As shall be explained in detailed fashion, the Court finds that plaintiffs are indeed entitled to attorney fees. However, the amounts sought by them must be reduced so as to reflect the number of reasonable hours that each attorney should be paid for.

I. Standard for the Computation of Attorney Fees Under 42 U.S.C. § 1988

A prevailing party in a section 1983 case is entitled to reasonable attorney fees under section 1988. *Morales Feliciano v. Hernández Colón*, 697 F.Supp. 51, 56 (D.P.R.1988). When appropriate, the lodestar approach serves as a guiding beacon of light in determining what reasonable attorney fees amount to in a given case. Under the approach adopted by the First Circuit and followed by this Court, a two-tiered process forms the bedrock of attorney fee calculation.

First, the Court calculates the prevailing hourly rate. Next, the Court takes a hard look at the time spent performing the various legal tasks, striking those which are excessive, duplicative or plainly unnecessary. (*Morales Feliciano*, 697 F.Supp. at 56 *quoting Grendel's Den Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984)). As would be expected, hours that survive a first weeding may still be in need for further pruning; the mere fact that a lawyer performs a given task does not render the same compensable at the full hourly rate. In this respect, this Court follows the clear trend of our Circuit, *see United States v. Metropolitan District Commission*, 847 F.2d 12, 19 (1st Cir.1988), which requires the Court to ascertain the legal skill involved in litigation of the case as well as the mental and emotional strain placed on counsel in the particular case. *Morales Feliciano*, 697 F.Supp. at 59. For example, "... an hour in court or brief drafting will be more valuable than fact finding tasks ... an hour of deposition-taking is usually not as legally and mentally exacting as an hour of writing letters or reviewing documents, the former will be priced higher than the latter." *Id.* at 59. Thus, as in *Morales Feliciano*, the Court shall divide the tasks performed by the attorneys into three categories. Depending on which category the task falls, plaintiffs will be awarded a fraction or full

---

1. The Quetglas' firm represented plaintiffs on a contingency basis.

hourly rate.[2] *E.g., id.* at 59.

■ In the past, once a court computed an attorney's lodestar, his fees could be upwardly adjusted if the case had been handled on a contingency basis. However, the Supreme Court recently put a screeching halt to this practice. *See City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 112 S.Ct. 2638 (1992).[3] In exceptional cases, this Court will still upwardly adjust an attorney's lodestar for factors other than contingency, such as the complexity of the issues involved, or the grueling nature of the work to be performed. *See, e,g. Morales Feliciano,* 697 F.Supp. at 60–61.

■ Contrary to the practice of upwardly adjusting lodestars, the practice of reducing these has been sanctioned by our Circuit. An attorney's fees may be reduced so as to reflect the degree of success achieved in a particular case. *Pearson v. Fair,* 980 F.2d 37, 47 (1st Cir. 1992). This calls for counsel to carefully maintain detailed time records, so as to wherever practicable, distinguish claims and issues to which a particular service is billed. *Domegan v. Ponte,* 972 F.2d 401, 423 (1st Cir. 1992). Whenever no detailed time records exist, a court may substantially reduce the amount of fees sought. *See, e.g., Grendel's Den* at 952.

■ Attorney fees amounts may also be reduced where overstaffing has taken place. *Pearson v. Fair* at 47. A court "should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Id.* at 47, *quoting Lipsett v. Blanco,* 975

F.2d 934, 938 (1st Cir.1992). This does not mean that when faced with a complex litigation, a party may not retain several attorneys at a time. However, if a party opts to do so, upon prevailing, he or she must affirmatively prove that a plural number of attorneys was required to handle the case. An attorney who charges high hourly rates is presumed to have expertise on the matter being litigated, therefore, he or she should generally need not the assistance of other attorneys in handling a case. *Id.* at 24.

## II. Application of Fees Standard to the Case at Bar

### *The Quetglas' Hourly Rates*

At the outset, it is necessary to scrutinize the Quetglas' legal backgrounds so as to determine their reasonable hourly rates. It is fair to place the Quetglas brothers, Eric and José, on the same plateau. After graduating from the University of Puerto Rico School of Law (Eric) and the Interamerican University School of Law (José), both became licensed attorneys in 1986. José first engaged in the handling of criminal matters and in late 1987 added a civil repertoire to his private practice. Eric served until late 1987 as law clerk to two former Chief Justices of the Puerto Rico Supreme Court, José Trías Monge and Víctor Pons. He then moved on to his present private practice, wherein he handles civil and criminal matters, mostly on a contingent fee basis. Both brothers currently belong to the Criminal Justice Act Panel. They have also attended seminars in trial

---

**2.** The three categories under which a task performed by an attorney may fall under are:

1) Low: includes notifications, visits and interviews; conferences with co-counsel and adversaries; drafting of letters; drafting and reading of intra-counsel memoranda; proofreading and copyreading; notification and preparation for depositions; review of documents; telephone conversations; and, travel time.

Hours falling under this category shall be compensated at 60 percent of the attorney's rate.

2) Medium: includes general research; taking and attendance to depositions; preparations for court hearings or conferences; preparation of subpoenas, class notices, interrogatories and answers to them, questionnaires and affidavits;

preparation of fee applications; and, preparation of informative motions.

Hours falling under this category shall be compensated at 80 percent of the attorney's rate.

3) High: includes court appearances, inchambers conferences, and the preparation and drafting/dictation of motions and briefs.

Hours falling under this category shall be compensated at 100 percent of the attorney's rate.

**3.** The attorney fees in *Dague* were sought pursuant to the fee provisions of the Clean Water and Solid Waste Disposal Acts. The Court nevertheless clearly indicated that the language of these statutes is similar to that of section 1988. 112 S.Ct. at 2641.

practice. This is not their breakthrough into civil rights litigation, as they successfully handled before Judge Jaime Pieras, Jr. of this District the case of *Ruiz v. González Caraballo,* a section 1983 action brought against several police officers for use of excessive force. On appeal, the jury's verdict was affirmed. *See* 929 F.2d 31 (1st Cir.1991). In sum, the Court can conclude that the Quetglas brothers are no newcomers to the legal profession. Although they are not seasoned veterans, they have demonstrated throughout this litigation the capacity to be successful federal litigators. Wherefore, the Court finds that for them a high hourly rate of $125.00 for 1992; $100.00 for 1990–1991; and $85.00 for 1988–1989 is reasonable.[4] The monetary increase over time accounts to the fact that young lawyers' rates go up as their experience increases.

The father, José F. Quetglas Alvarez, graduated from the University of Puerto Rico School of Law and is an attorney with over thirty years of experience in private trial practice. Over the years, he has been the senior partner in several law partnerships, and currently is the leading trial attorney in his family run law firm. Presently, he works only in certain select civil contingency or flat fee cases. Wherefore, the Court finds that for him a high hourly rate of $150.00 is reasonable.

### Unnecessary, excessive and duplicative hours

As stated earlier, hours which are duplicative, unproductive, excessive or otherwise unnecessary shall be subtracted from the total number of hours charged. *Grendel's Den,* 749 F.2d at 950.

#### A.

 Defendants first contend that plaintiffs did not prevail in all their claims since at trial the Court dismissed the claim against codefendant Dr. Mercedes Otero de Ramos, former Administrator of Corrections for the Commonwealth.[5] In their opinion, the Court should deduct one third of the Quetglas' total hours, for in their records they do not specify how many hours her attorneys spent in preparing and litigating the case against Dr. Otero de Ramos. Despite the propriety of reducing a fee award so as to reflect the degree of success achieved, the dismissal of one of several defendants does not necessarily indicate that a plaintiff has not succeeded in every claim, for a claim may still survive as to other codefendants. As a matter of fact, in this case, plaintiffs did succeed in both the section 1983 and pendent tort claims against all codefendants other than Dr. Otero de Ramos. Thus, defendants' argument fails.

#### B.

 Defendants' next contention is that plaintiffs have included duplicative hours in their petition since throughout the litigation they have on occasions used two, and during trial three, attorneys at a time. Plaintiffs counter by stating that their attorneys comprised a "legal team" which at times, such as during trial, worked in the strategy making process. Despite Eric and José's competent performances throughout the litigation, the Court is of the opinion that had it been necessary, a single attorney could have handled the entire case. Although several defendants were involved in this case, the legal issues raised therein were not so complex or novel so as to warrant having more than one attorney bill for the work performed. The Quetglas' decision to work as a team was theirs alone. Thus, even though the victory belonged to the team, the Court shall treat each task during the litigation as performed by one attorney. Regarding Eric

---

**4.** Defendants contend that plaintiffs have not met their burden of establishing the prevailing market rates in the community for similar services. The undersigned, has dealt with numerous § 1988 fee petitions since his appointment in 1979. Most notorious amongst these petitions are those spawning from the twelve year old *Morales Feliciano* case. Thus, the Court takes judicial notice of what the prevailing hourly rates are amongst the approximately 4,488 attorneys admitted (after 1950) to practice before this District Court.

**5.** Said claim was dismissed pursuant to Fed. R.Civ.P. 41(b).

and José, it does not matter who gets credit for the work performed as their hourly rates are the same. Regarding José senior, however, the Court shall deduct all the hours he spent at trial. Although he was indeed present in Court throughout the entire process, it was Eric and José who amongst themselves presented plaintiffs' evidence, direct and cross examined witnesses, and made the opening and closing arguments.

### C.

Defendants finally contend that plaintiffs have included excessive attorney hours for "out of court" work in their petition. The Court shall address each of the items which in its opinion need to be eliminated or reduced. Items contested by the defendants and not discussed below have been deemed as acceptable by the Court.

█ 1. 8/25/88: 3:50 hours to photocopy and research case law. The Court shall not consider any time spent on photocopying as billable time. Since the records do not indicate what percentage of this time was spent solely on research, the Court shall reduce the billable research time to 2:00 hours.

2. 8/25/88: 3:00 hours to research and photocopy additional cases. Again, due to lack of specificity, the Court shall reduce the total billable hours to 1:30.

3. 12/15/88 and 12/19/88: 10:00 hours to research, draft and proofread a Motion in Reply to Defendants' Memorandum of Law in Support of Partial Judgment on the Pleadings. In the Court's opinion, this time is excessive as the attorneys should have at this juncture in the litigation been familiar with the applicable case law. The attorneys have not detailed that any of their research involved any new jurispru-

dence or issues. Thus, the Court shall reduce this time to 5:00 hours.

4. 4/28/89: 4:00 hours to draft a reply to Defendants Opposition to Motion for Leave to Amend the Complaint. In the Court's opinion, 1:30 hours should be more than sufficient time for an attorney with more than two years experience to perform such a task.

5. 6/2/89: 3:00 hours to draft a Motion Requesting Leave to Reply and a Reply to Defendants' Opposition to Urgent Motion Compelling Discovery. For the same reason discussed in item 4, the Court shall slash said time to 1:30 hours.

6. 5/30/90: 4:00 hours to prepare a Motion Requesting Modification of Order. For the same reason discussed in items 4 and 5, the Court shall slash said time to 1:00 hour.

### III. Upward Adjustment

█ The Court recognizes that the Quetglas clan embarked in an adventurous and risky five year trek which ended in a courtroom harboring six unpredictable jurors. In the past, the Court would have rewarded their lancelotian efforts of handling the case on a contingency basis by upwardly adjusting their lodestars. Unfortunately, *City of Burlington v. Dague* precludes the Court from doing so. The Court also does not consider this to be an exceptional section 1983 litigation so as to warrant an upward adjustment for factors other than contingency. *Cf. Morales Feliciano*, 697 F.Supp. at 60–61.

### IV. Conclusion

In light of the above, the Court finds that plaintiffs are entitled to attorney fees in the amount of $36,150.10.[6]

IT IS SO ORDERED.

---

**6.** A detailed step by step explanation of how this award was computed is attached hereto as Appendix I.

APPENDIX I

I. Quetglas, Eric and José, Jr.

<u>1988–1989</u> (High hourly rate of $85.00)

| | | | |
|---|---|---|---|
| Low: | 16.50 hours × $51.00/hour = | $ | 841.50 |
| Medium: | 40.45 hours × $68.00/hour = | | 2,750.60 |
| High: | 53.10 hours × $85.00/hour = | | 4,513.50 |

**Total 1988–89:** **$ 8,105.60**

<u>1990–91</u> (High hourly rate of $100.00)

| | | | |
|---|---|---|---|
| Low: | 2.15 hours × $60.00/hour = | $ | 129.00 |
| Medium: | 36.85 hours × $80.00/hour = | | 2,948.00 |
| High: | 13.65 hours × $100.00/hour = | | 1,365.00 |

**Total 1990–91:** **$ 4,442.00**

<u>1992</u> (High hourly rate of $125.00)

| | | | |
|---|---|---|---|
| Low: | 23.30 hours × $75.00/hour = | $ | 1,747.50 |
| Medium: | 103.80 hours × $100.00/hour = | | 10,380.00 |
| High: | 91.80 hours × $125.00/hour = | | 11,475.00 |

**Total 1992:** **$23,602.50**

II. Quetglas, José, Sr.

<u>1988–92</u> (High hourly rate of $150.00)

| | | | |
|---|---|---|---|
| Low: | 0 hours × $90.00/hour = | $ | 00.00 |
| Medium: | 0 hours × $120.00/hour = | | 00.00 |
| High: | 0 hours × $150.00/hour = | | 00.00 |

**Total 1988–92:** **$ 00.00**

III. Total hours: Eric; José, Jr.; and José, Sr. for 1988–92:

| Eric and José, Jr. | | José, Sr. | | |
|---|---|---|---|---|
| $36,150.10 | + | $ 00.00 | = | **$36,150.10** |

IV. Total:

$36,150.10 (lodestar) + $00.00 (0% upward adjustment) = **$36,150.10**