USCA1 Opinion

 

 March 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1763 ANTONIA PARIS, ET AL., Plaintiffs-Appellants, v. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, ET AL., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ John W. Dineen, with whom Yesser, Jessup & Green, was on ______________ _______________________ brief for appellants. Herbert E. Forrest, Federal Programs Branch, Civil Division, __________________ Department of Justice, with whom Stuart M. Gerson, Assistant _________________ Attorney General, Lincoln C. Almond, United States Attorney and _________________ William G. Kanter, Attorney, Appellate Staff, were on brief for _________________ appellee U.S. Department of Housing and Urban Development. Nora J. Mann, with whom Leigh A. McLaughlin and Gilman, _____________ _____________________ _______ McLaughlin & Hanrahan, were on brief for appellee Corcoran _______________________ Management Co., Inc. ____________________ March 4, 1993 ____________________ TORRUELLA, Circuit Judge. This case requires that we ______________ decide whether a party who loses on the only litigated claim, but achieves the relief sought as a result of intervening congressional action prior to a ruling by the district court on the remaining grounds in the complaint, can nevertheless recover attorney's fees. We hold that, in appropriate cases, the district court may award attorney's fees. Because we find this to be such a case, we reverse the district court ruling to the contrary, and remand for action consistent with this opinion. I BACKGROUND1 BACKGROUND __________ Appellants, a group of very low income families, challenged a tenant selection scheme at the Chad Brown public housing project in Providence, Rhode Island. In the late 1970s, the Department of Housing and Urban Development ("HUD") and the Providence Housing Authority ("PHA") hired Corcoran Management Co., Inc. ("Corcoran") to supervise the modernization of the project. In order to achieve an economic mix of tenants, Corcoran, with HUD's approval, attempted to implement a plan that would skip-over very low income families on the waiting list and settle higher income families first. In 1986, appellants sought declaratory and injunctive relief against both HUD and Corcoran. The complaint alleged that HUD's adoption of the income mixing scheme violated the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. 1437 et __ ____________________ 1 The facts underlying this case are detailed at Paris v. Dept. _____ _____ of Housing & Urban Development, 843 F.2d 561 (1st Cir. 1988) ________________________________ ("Paris I"). _______ seq. (Supp. 1992); the Fair Housing Act, 42 U.S.C. 3601 et seq. ____ __ ____ (1977 & Supp. 1992); and the Due Process and Equal Protection Clauses of the Constitution of the United States. Appellants also brought a claim against Corcoran under 42 U.S.C. 1983 for violation of their civil rights on the same statutory and constitutional grounds. The district court granted a preliminary injunction based on the Housing Act claim. We reversed, expressly leaving the other issues open for resolution by the district court. Paris I, 843 F.2d at 574 n.20. _______ In the summer of 1988, Congress passed the Stewart B. McKinney Homeless Assistance Amendments Act of 1988. This law prohibited public housing agencies from by-passing the order of the waiting list for the purpose of assisting higher income families first.2 The Conference Report stated that, "[w]hile the conferees affirm the principle of income mix in assisted housing projects, this amendment (which is necessary in light of the _____________________________________ decision in Paris v. HUD, 843 F.2d 561) makes it clear that lower ______________________________________ income families on a waiting list may not be skipped over in ____________________ 2 The act provided in relevant part: Sec. 1001. Income Eligibility for Assisted Housing. (b) CLARIFICATION.-- Section 6(c)(4)(A) of the United States Housing Act of 1987 (42 U.S.C. 1437d(c)(4)(A)) is amended by inserting before the semicolon at the end the following: "and shall not permit public housing agencies to select families for residence in an order different from the order on the waiting list for the purpose of selecting relatively higher income families for residence." Pub. L. No. 100-628, 1001(b), 102 Stat. 3263. -3- order to help a higher income family first." H.R. Conf. Rep. No. 1089, 100th Cong., 2d Sess. 91-92 (1988), reprinted in 1988 ____________ U.S.C.C.A.N. 4450, 4475-76 (emphasis supplied). HUD and Corcoran amended the income mixing plan to conform to these statutory changes. Appellants moved for a voluntary dismissal having achieved their goal. The district court dismissed the suit without reaching the other legal issues in the case. In 1990, appellants moved for an attorney's fee award against HUD under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412(d)(1)(A), and the Fair Housing Act, 42 U.S.C. 3613(c)(2). Appellants similarly sought fees from Corcoran under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. 1988, and the Fair Housing Act. The district court rejected the claim under the EAJA finding that appellants were not "prevailing parties" and that the government's position in the litigation was "substantially justified." It refused recovery under the Fair Housing Act and 1988, reasoning that it could not award fees pursuant to those statutes unless the party prevails on those claims. Since appellants voluntarily dismissed the action before the court considered those issues, the court denied the fee request. II EAJA CLAIM EAJA CLAIM __________ A party seeking attorney's fees under 2412(d)(1)(A) of the EAJA must demonstrate that it is a "prevailing party" and -4- that the government's position was not "substantially justified."3 The prevailing party inquiry under the EAJA is consistent with that under other federal fee-shifting statutes. Texas State Teachers Ass'n v. Garland Independent School Dist., ___________________________ _________________________________ 489 U.S. 782, 784 (1989); Guglietti v. Secretary of HHS, 900 F.2d _________ ________________ 397, 398 (1st Cir. 1990). In general, the court looks for some "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Texas Teachers, 489 U.S. at 792-93; see also Farrar v. Hobby, 113 ______________ ________ ______ _____ S. Ct. 566, 572-73 (1992). We have identified two main avenues by which a party may demonstrate the changed legal relationship. The party either must enjoy bottom-line success in the litigation or act as a catalyst in causing the desired alteration. Guglietti, 900 F.2d at 400-01; Nadeau v. Helgemoe, 581 F.2d 275, _________ ______ ________ 278-79 (1st Cir. 1978). Unlike other fee-shifting statutes, the EAJA presents the additional hurdle of showing that the government's position was not substantially justified. Compare _______ 42 U.S.C. 1988(b) (Civil Rights Attorney's Fees Awards Act) and ___ 42 U.S.C. 3613(c)(2) (Fair Housing Act) with 28 U.S.C. ____ ____________________ 3 28 U.S.C. 2412(d)(1)(A) (Supp. 1992) provides: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. -5- 2412(d)(1)(A) (EAJA). We review the district court's prevailing party and substantial justification determinations under the abuse of discretion standard. Pierce v. Underwood, 487 U.S. 552, 558-63 ______ _________ (1988) (substantial justification); McDonald v. Secretary of ________ ____________ HHS, 884 F.2d 1468 (1st Cir. 1989) (prevailing party). When the ___ district court errs with respect to a purely legal issue, however, our review is de novo. Domegan v. Ponte, 972 F.2d 401, __ ____ _______ _____ 406-07 (1st Cir. 1992); see also Guglietti, 900 F.2d at 399. ________ _________ For the moment we shall postpone consideration of the district court's finding on prevailing party status because appellants' claim under the EAJA is dispensed with easily under the substantial justification prong of the EAJA fee award inquiry. Appellants predicate their EAJA claim on their alleged success on the substantive Housing Act claim. Because the Housing Act does not have its own fee-shifting provision, appellants were forced to seek fees under the general federal fee-shifting statute, the EAJA. HUD and Corcoran's position with respect to the Housing Act was clearly justified prior to the McKinney Amendments. Indeed, this court agreed with their interpretation of the Housing Act in Paris I. Congress' later _______ action does not alter our conclusion. Thus, the district court did not abuse its discretion in denying attorney's fees under the EAJA. III FAIR HOUSING ACT AND SECTION 1988 FAIR HOUSING ACT AND SECTION 1988 _________________________________ -6- Unlike the EAJA, neither the Fair Housing Act's fee- shifting provision,4 nor section 1988,5 require that appellants demonstrate that the government's position was not substantially justified. The district court rejected appellants' arguments reasoning that success on these claims, by which it must have meant--judicial consideration prior to success that mooted the court proceedings--was the sine qua non of an award of fees ____ ___ ___ pursuant to these statutes. HUD and Corcoran make the superficially appealing argument that fees cannot be awarded to a party who lost on the only issue that was litigated. We are unpersuaded. In Maher v. Gagne, 448 U.S. 122 (1980), the Supreme _____ _____ Court considered whether a party that sued state officials under the Social Security Act, 42 U.S.C. 402(a)(7), 602(a)(7), and the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, but settled the case ____________________ 4 The Fair Housing Act fee-shifting provision, 42 U.S.C. 3613(c)(2) (Supp. 1992) provides in relevant part: [T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person. 5 42 U.S.C. 1988 (b) (Supp. 1992) provides: In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. -7- by entry of a consent decree prior to determination by the district court of whether her constitutional rights had been violated, could recover attorney's fees under section 1988.6 The court held that the district court's power to award fees was not conditioned on "full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." Maher, 448 U.S. at 129. The Court stated that _____ "Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under the Act."7 Id. at 132 n.15. The Maher court ___ _____ recognized that such a policy provided a perfect balance between the congressional policy of encouraging suits to vindicate constitutional rights and the policy against unnecessary decision of constitutional questions. Id. at 133. ___ The Court did not intend that the district court litigate the merits of the claims once the case had been resolved ____________________ 6 In Maine v. Thiboutot, 448 U.S. 1, 9-10 (1980), the Court held _____ _________ that 1988 provides a basis for awards for any 1983 action, including those based on statutory, rather than, constitutional violations. In Maher, as here, the unlitigated claims were both _____ statutory and constitutional. 7 The legislative history accompanying H.R. 15460, a bill almost identical to that passed stated: "if the claim for which fees may be awarded meets the 'substantiality' test, see Haggans v. ___ _______ Lavine, [415 U.S. 528 (1974)]; United Mine Workers v. Gibbs, 383 ______ ___________________ _____ U.S. 715 (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the nonfee claim arising out of a 'common nucleus of operative fact.' United Mine Workers v. ____________________ Gibbs, supra, at 725." Maher, 448 U.S. at 133 n.15 (quoting H.R. _____ _____ _____ Rep. No. 1558, 94th Cong., 2d Sess. 4 n.7 (1976)). -8- in order to decide the fee issue. On the contrary, the Court has cautioned against such wasteful secondary litigation. Texas _____ Teachers, 489 U.S. at 791. In Haggans v. Lavine, 415 U.S. 528 ________ _______ ______ (1974), the Court developed a "substantiality" test to aid lower courts in determining when it is appropriate for them to exercise jurisdiction over statutory causes of action that, although pendent to constitutional claims over which the court has jurisdiction, have no independent jurisdictional basis. Id. at ___ 542. Applied in this different context, the Haggans test serves _______ as a proxy for determination on the merits of the claims once the litigation is resolved to establish that an attorney's fee award is justified. The threshold "substantiality" test conserves judicial resources while continuing to require that plaintiffs demonstrate that their success is sufficiently related to a civil rights victory before receiving fees under a fee-shifting regime. In Smith v. Robinson, 468 U.S. 992 (1984), the Supreme _____ ________ Court clarified principles implicit in Maher, by explaining that _____ "plaintiffs may not rely simply on the fact that substantial fee- generating claims were made during the course of the litigation." Id. at 1007. Further examination of the claims and their ___ relationship is required. The Court specifically stated that there was nothing wrong with seeking relief under a certain statute, or amending a complaint, to include a claim for which attorney's fees are available. Id. at 1009 n.12. The court ___ concluded, however, that where petitioners "have presented -9- distinctly different claims for different relief, based on different facts and legal theories, and have prevailed only on a nonfee claim, they are not entitled to a fee award simply because the other claim was a constitutional claim that could be asserted through 1983." Id. at 1015. ___ This case does not present that situation; the facts arise from a common nucleus of operative fact, and the theories are but different statutory avenues to the same goal. The appellants are victims of a happenstance that the district court opted to decide on the basis of the Housing Act claim, and that the appeal proceeded as it did, before Congress intervened. Nor are we presented with the situation in Smith, in which the _____ Supreme Court held that one of the several statutory and constitutional claims was the exclusive avenue of redress, thereby barring recovery under another fee-shifting statute alleged in the complaint.8 On the contrary, we think that the principles of Maher _____ clearly apply to the present case. Maher considered one manner _____ in which cases are resolved without formal adjudication or ____________________ 8 In Smith, plaintiffs asserted claims based on state law; the _____ Education of the Handicapped Act (EHA), 84 Stat. 175, as amended, 20 U.S.C. 1400 et seq.; section 504 of the Rehabilitation Act __ ____ of 1973, 87 Stat. 394, as amended, 29 U.S.C. 794; and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Court concluded that where a remedy was provided with "clarity and precision" under the EHA, a plaintiff may not circumvent that exclusive avenue by appeal to other statutory schemes. Smith, 468 U.S. at 1021. Congress subsequently altered _____ the Court's specific holding under the EHA to provide fees in the Handicapped Children's Protection Act of 1986, Pub. L. No. 99- 372, 100 Stat. 796, codified at 20 U.S.C. 1415 (Supp. 1992). -10- decision by a court on all issues raised by the parties. Voluntary dismissal is but another way in which a plaintiff saves judicial resources once it has achieved its desired goal. After a case is resolved, by whatever method, and a party requests attorney's fees, we look for a "prevailing party" within the meaning of term as spelled out in the case law. Appellants are not a "prevailing party" under the merits test since the court never considered the merits of the claims in issue. Langton v. Johnston, 928 F.2d 1206, 1224 (1st Cir. 1991); _______ ________ Coalition for Basic Human Needs v. King, 691 F.2d 597, 599 (1st _______________________________ ____ Cir. 1982) (merits test "states the obvious, that a party has prevailed if it wins the litigation"). Appellants, however, are a catalyst under Guglietti, 900 F.2d at 401-02, and Nadeau, 581 _________ ______ F.2d at 279-80. To be a catalyst the party must demonstrate (1) a causal connection between the litigation and the relief sought and (2) that the success was not obtained by a gratuitous gesture of the fee-target. Guglietti, 900 F.2d at 401. The suit need _________ not be the sole cause but must play a "provocative" role or be a "competent producing cause." Id. ___ The district court summarily determined that appellants were not catalysts because it believed that Congress, not the litigation, caused defendants to change their income mix policy. We think this argument is incorrect. The fact that Congress delivered the plaintiffs' requested relief rather than the parties sued, HUD and Corcoran, provides no relevant distinction. Corcoran, HUD, and Congress -11- are manifestations of the same entity, the government. HUD is simply an instrument of Congress' will, and Corcoran does HUD's bidding. The district court also relied on our decision in Guglietti, 900 F.2d 397, to deny appellants prevailing party _________ status under the catalyst theory. In Guglietti, plaintiff's _________ Social Security disability benefits were terminated. Guglietti sought review of the determination. While on appeal to this court, Congress amended the statute and directed that cases on appeal, such as Guglietti's, be remanded for a determination under the new statutory standard. Under that standard, his benefits were reinstated. Guglietti obtained attorney's fee under the EAJA in the district court. On appeal, we reversed the award. Guglietti, 900 F.2d at 403. We reasoned that because _________ plaintiff was just one of thousands of similar claims, the relationship between the litigation and Congress' action was too tenuous to be considered the "provocative" cause of legislation. Id. at 401 (relying on Hendricks v. Bowen, 847 F.2d 1255, 1258 ___ _________ _____ (7th Cir. 1988); Truax v. Bowen, 842 F.2d 995, 997 (8th Cir. _____ _____ 1988)). This case is clearly distinguishable from Guglietti, _________ however. Here the Congressional change was wrought by one case, Paris I. The Conference Report specifically states that the _______ amendments were necessary to change the result in Paris I. H.R. _______ Conf. Rep. No. 1089 at 91-92, see ante at p. 3. Guglietti ___ ____ _________ recognized that assigning a particular case among thousands in -12- the context of social securities benefits strains the notion of provocative cause. To read Guglietti to prevent attorney's fee _________ in the present case is to negate the possibility of ever granting attorney's fees when Congress amends or clarifies legislation and thereby secures plaintiff's requested interpretation of a statute. Plaintiffs would be forced to choose between litigation and pursuing legislative changes via lobbying activities, or risk losing an award of fees. Such an insurmountable barrier to recovery would contravene Congress' intent in enacting fee- shifting statutes. Texas Teachers, 489 U.S. at 793. In any ______________ event, this case sits at the opposite end of the spectrum from Guglietti since Congress specifically mentioned the case in the _________ legislative history as being the "necessary" force behind its enactment. Appellants' suit is, thus, fairly characterized as a catalyst of Congress' amendment. The district court erred in holding to the contrary. As such, appellants' law suit affected a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote" in the fee-shifting provisions of the Fair Housing Act with respect to the government, and in 1988 with respect to Corcoran. Texas _____ Teachers, 489 U.S. at 792-93. ________ Unfortunately this case is not at an end. On remand, the district court must determine two matters. First, the court must decide whether appellants raised statutory and/or constitutional claims that pass the "substantiality" test of -13- Maher and Haggans in order to recover under the alternative fee- _____ _______ shifting regimes pursuant to unlitigated claims.9 Second, the district court must determine the amount of fees to which appellants are entitled under Hensley v. Eckerhart, 461 U.S. 424 _______ _________ (1983), as "the degree of the plaintiff's overall success goes to the reasonableness of the award under Hensley, not to the _______ availability of a fee award vel non." Texas Teachers, 489 U.S. ___ ___ ______________ at 793. Reversed and remanded for action consistent with this _______________________________________________________ opinion. _______ ____________________ 9 As we have not heard argument on those claims we cannot answer that question. -14-