UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1612

TASHIMA WILLIAMS, ET AL.,

Plaintiffs, Appellants,

v.

THE HANOVER HOUSING AUTHORITY, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge] 



Before

Stahl, Circuit Judge, 

Aldrich and Campbell, Senior Circuit Judges. 



Judith Liben with whom Ernest Winsor, Massachusetts Law Reform 
Institute, were on briefs for appellant.
Bernard M. Ortwein for appellees. 



May 22, 1997


CAMPBELL, Senior Circuit Judge. At issue in this 

appeal is whether the plaintiffs in an action they brought

under 42 U.S.C. 19831 are entitled to recover attorneys'

fees under 42 U.S.C. 1988.2 In the course of plaintiffs' 

1983 action, the district court determined an underlying

state law issue in plaintiffs' favor. Because federal and

state officials thereupon accepted the district court's

interpretation reversing a former interpretation

challenged by plaintiffs the 1983 action became moot.

The district court denied attorneys' fees, ruling that fees

under 1988 were improper as plaintiffs had vindicated no

federal right. Williams v. Hanover Housing Auth., 926 F. 

Supp. 10 (D. Mass. 1996). See also Williams v. Hanover 

Housing Auth., 871 F. Supp. 527 (D. Mass. 1994). The court 

 

1. Section 1983 provides, in relevant part:
"Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any
State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of
the United States or other person within the
jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or
other proper proceeding for redress."
42 U.S.C. 1983 (West 1994).

2. Section 1988 provides, in pertinent part:
"In any action or proceeding to enforce a provision
of section [] . . . 1983 . . . , the court, in its 
discretion, may allow the prevailing party, other 
than the United States, a reasonable attorney's fee
as part of the costs."
42 U.S.C. 1988(b) (West 1994) (emphasis added).

-2-

also declined fees as a matter of discretion. We conclude,

notwithstanding plaintiffs failure to prevail on specifically

federal grounds, that they are nonetheless prevailing parties

under 1988, and entitled to fees.

I. I.

The disputed fees claim arises in the following

circumstances. The plaintiffs-appellants were receiving

federal housing subsidies under Section 8 of the United

States Housing Act of 1937, as amended.3 In April of 1993,

they brought an action under 42 U.S.C. 1983 against the

Arlington and Danvers, Massachusetts, Public Housing

Authorities (the "Authorities"), as well as against the

Hanover, Massachusetts Public Housing Authority and the

Secretary of the Department of Housing and Urban Development

("HUD").4 Plaintiffs-appellants alleged that the

Authorities, with HUD's approval, were illegally and

unconstitutionally preventing them from using their Section 8

subsidies for housing outside the geographical limits of the

city or town within which the Authority issuing the subsidy

was located. The Authorities are quasi-public entities

 

3. Plaintiffs'-appellants' subsidies were provided under the
Section 8 Rental Certificate and Voucher Programs. 42 U.S.C.
1437f(r). See 24 C.F.R. Parts 882, 887 (1995).  

4. Appellants did not seek attorneys' fees against the
Hanover Public Housing Authority, nor against the Secretary
of HUD, and these defendants are not parties to this appeal.

-3-

established under Massachusetts law to administer federal and

state housing programs. Mass. Gen. Laws ch. 121B, 1 et 

seq. (West 1986 & Supp. 1996).  

The Housing Act of 1937, which includes Section 8,

sought to provide an adequate supply of housing for low

income families by subsidizing their rent in the private

market. 42 U.S.C. 1437f(a) (West 1994). Section 8 allowed

tenants wider geographical choice than did earlier programs,

increasing opportunities to obtain dwellings in areas of less

concentrated poverty. 42 U.S.C. 1437f(r) (West 1994).5

See also Cranston-Gonzalez National Affordable Housing Act, 

Pub. L. No. 101-625, 551, 104 Stat. 4224 (1990); Housing

and Community Development Act of 1987, Pub. L. No. 100-242, 

145, 101 Stat. 1852 (1988).

The Act leaves it up to the states, however, to

determine the area within which a particular public housing

authority may contract with landlords to furnish subsidized

housing. HUD, the federal agency administering the Section 8

 

5. Section 1437f(r) provides, in part:
"(1) Any family assisted under subsection
(b) or (o) of this section may receive
such assistance to rent an eligible
dwelling unit if the dwelling unit to
which the family moves is within the same
State, or the same or a contiguous
metropolitan statistical area as the
metropolitan statistical area within
which is located the area of jurisdiction
of the public housing agency approving
such assistance . . . ." 42 U.S.C. 
1437f(r)(1) (West 1994).

-4-

housing programs, provided in its regulations that the local

public housing authorities will determine their own

jurisdictional reach by reference to state law. See 24 

C.F.R. 882.103(a) (1995).

In 1977, HUD was presented with conflicting legal

opinions from two different Massachusetts public housing

authorities as to whether they could legally contract with

private landlords outside their municipal boundaries.6 HUD

asked the Massachusetts Executive Office of Communities and

Development ("EOCD"), the state agency that supervises local

public housing authorities, to seek a legal opinion from the

Massachusetts Attorney General. Instead, the EOCD provided

its own legal opinion, which was that a Massachusetts public

housing authority could not contract with private landlords 

outside its municipal boundaries, except by agreement with

another local public housing authority. HUD and the

Authorities accepted and followed the EOCD's opinion on this

matter. The extent of a local authority's "jurisdiction" to

provide subsidized housing took on added significance in 1992

when Congress amended the portability rules of the Section 8

housing programs. Plaintiffs say that the amendment forced

 

6. The Cambridge Housing Authority, like the plaintiffs in
this case, took the position that state law does not bar
local public housing authorities from contracting anywhere in
the Commonwealth, while the Arlington Housing Authority,
similar to the defendants in this litigation, took a much
narrower view of Section 8 "jurisdiction."

-5-

them and others like them to seek rental units within the

jurisdiction of a single authority.7 Unless that authority

could provide housing beyond its municipal limits, tenants

like plaintiffs were curtailed in their mobility and choice

of housing. Faced with this situation, plaintiffs sued in

the district court under 1983 in April of 1993, seeking a

judicial determination of their right to use their Section 8

housing subsidies in any community within the Commonwealth.

To expedite a decision, the parties agreed that the facts

would be submitted as a case stated. See Continental Grain 

Co. v. Puerto Rico Maritime Shipping Auth., 927 F.2d 426, 429 

n.7 (1st Cir. 1992).

In contending that it was unlawful for HUD and the

Authorities to restrict their Section 8 housing subsidies to

the city or town in which the issuing Authority was located,

the tenants alleged that the geographical restrictions

 

7. Section 147 of the Housing and Community Development Act
of 1992 amended the portability provisions of 42 U.S.C. 
1437f by providing that:
"any family not living within the
jurisdiction of a public housing agency
at the time that such family applies for
assistance from such agency shall, during
the 12-month period beginning upon the
receipt of any tenant-based rental
assistance made available on behalf of
the family, use such assistance to rent
an eligible dwelling unit located within
the jurisdiction served by such public
housing agency." Housing and Community
Development Act 147, 42 U.S.C. 
1437f(r)(1) (West 1994).

-6-

violated 42 U.S.C. 1437f(r)(1), the relevant HUD

regulations, Title VIII of the Civil Rights Act of 1968, and

42 U.S.C. 1983. They also alleged that the restrictions

interfered with their constitutional right to travel under

the Fifth and Fourteenth Amendments to the United States

Constitution.

Fearing the loss of their Section 8 subsidies if

they could not immediately find housing within the municipal

boundaries of the Authority that issued their respective

Section 8 certificates, the plaintiffs moved for a

preliminary injunction that would toll or freeze the

subsidies' expiration dates. The need for preliminary relief

ceased, however, when defendants agreed not to terminate the

plaintiffs' subsidies while the case was pending.

After reviewing submissions and hearing arguments,

the district court issued an oral opinion on September 9,

1993, followed by a written decision on December 12, 1994.

See Williams, 871 F. Supp. at 527-35. The district court 

stated in both that, in its view, Massachusetts law permitted

state public housing authorities to contract with landlords

owning dwellings outside their municipal boundaries.

Less than a month after the district court's oral

opinion, HUD issued a directive to the Massachusetts public

housing authorities informing them that all Section 8 tenants

could henceforth use their housing subsidies anywhere in the

-7-

Commonwealth. HUD, as the district court later declared,

Williams, 926 F. Supp. at 12, treated the district court's 

ruling as an authoritative declaration of state law,

superseding the contrary opinion of the EOCD. The

Authorities also went along.

While the district court rendered its own opinion

as to an authority's jurisdiction, it also certified the same

question to the Massachusetts Supreme Judicial Court.8

Before that court reached the matter, the district court

withdrew its certification, in part because of certain

changes in HUD's regulations. At a November 30, 1995 hearing

in the district court to determine the status of the case,

HUD assured the district court that, in spite of its changed

regulations,9 it would continue to instruct all Massachusetts

public housing authorities to abide by the court's oral and

written decisions issued in plaintiffs' 1983 case. The

district court thereupon dismissed the 1983 action as moot

and plaintiffs petitioned, unsuccessfully, for their

attorneys' fees. 

II. II.

 

8. The district court certified the following question:
"Is a Massachusetts Public Housing
Authority legally barred from contracting
with landlords outside the boundaries of
the organizing city or town?"

9. Compare 24 C.F.R. 882.103(a) (1995) with 60 Fed. Reg. 
34660, 34697 (1995). 

-8-

In its opinion denying to plaintiffs attorneys'

fees under 42 U.S.C. 1988, the district court stated that,

to receive fees, the plaintiffs had to be prevailing parties

in their 1983 action. In that action, the court continued,

plaintiffs claimed to have been deprived of "rights secured

by federal statutes, regulations and the United States

Constitution." Williams, 926 F. Supp. at 13. In the court's 

view, plaintiffs never became entitled to fees because the

court never found that they "had a right under federal law to

have the Authorities contract outside of their political

boundaries for Section 8 housing." Id. Rather the import of 

the court's ruling was that state, not federal law allowed

the Authorities to contract outside of their political

boundaries. Id. As plaintiffs did not vindicate a federal 

right, the district court believed that 1988 provided no

right to fees.

The court also stated, as a separate ground for

decision, that it would refrain from awarding attorneys' fees

as a matter of discretion, even assuming plaintiffs could be

said to have prevailed on a federal right.

III. III.

In reviewing the district court's denial of fees,

we turn first to its ruling that, because plaintiffs did not

prevail on any of their federal claims, they are barred from

receiving attorneys' fees under 1988. We review this

-9-

ruling de novo as it presents essentially a question of law, 

not the individualized considerations which lead us to apply

a deferential review standard. See Domegan v. Ponte, 972 

F.2d 401, 406 n.8 (1st Cir. 1992).

We think the district court's analysis is

unsupported by Supreme Court precedent and that of this and

other circuits. The clear tendency of the courts has been to

apply the fees statute in a more practical and less

restrictive way.

Section 1988 itself nowhere states that attorneys'

fees can be awarded only to those who prevail on expressly

federal grounds. To be sure, the statute specifies that fees

are to be awarded only "in" any of the enumerated federal

causes of action, including 1983. Note 2, supra. And fees 

can be allowed only to a prevailing party. But the

attorneys' fees being requested here are for services in an

action to enforce a provision of 1983 and (as further

discussed below) plaintiffs have, in every practical sense,

prevailed having, as a result of their lawsuit, achieved

precisely the end-relief they wanted, namely the right to use

their Section 8 housing subsidies outside the political

boundaries of the Authority providing the subsidy.

To uphold the district court's rationale, we would

have to read into 1988 an implied further requirement that,

to be a prevailing party, it is necessary not only to have

-10-

secured a significant objective of one's federal lawsuit, but

to have done so by obtaining a favorable ruling on some

federal legal or constitutional claim advanced in the suit.

A theory akin to this was rejected seventeen years ago in

Maherv. Gagne, 448 U.S. 122 (1980), the Supreme Court saying, 

"The fact that respondent prevailed
through settlement rather than through
litigation does not weaken her claim to
fees. Nothing in the language of 1988
conditions the District Court's power to
award fees on full litigation of the
issues or on a judicial determination
that the plaintiffs' rights have been
violated. Moreover, the Senate Report
expressly stated that 'for purposes of
the award of counsel fees, parties may be
considered to have prevailed when they
vindicate rights through a consent
judgment or without obtaining relief
. . . ."

Maher, 448 U.S. at 129 (citation omitted). 

Maher, it is true, did not deal with precisely the 

present situation, where the winning party has prevailed

through the federal court's favorable interpretation of an

issue of state law. But decisions in this and other circuits

have dealt with outcomes like the present. These decisions

indicate that it is immaterial for 1988 purposes that

plaintiffs' success in the 1983 action results from a

favorable ruling on a relevant issue of state law, so long as

the state law issue and the federal claims being made in the

1983 proceeding are closely interrelated. 

-11-

Judge (now Justice) Breyer writing for this court

in Aubin v. Fudala, 782 F.2d 287, 291 (1st Cir. 1986) 

(citation omitted), said that "'victory' in a civil rights

suit is typically a practical rather than a strictly legal

matter." The court went on to endorse the Aubins' right to

fees if they received "the basic relief they sought (but on

the state claim) and if, in fact, the state and federal

claims are factually and legally interconnected." Id. In 

Aubin, id., we quoted the statement in 10 C. Wright, A. 

Miller & M. Kane, Federal Practice and Procedure 2675 at

306 (2d ed. 1983), that 1988 "has been applied to allow

fees for the successful prosecution of pendant state law

claims when the federal claims, though presenting substantial

federal issues, never were reached by the district court."

See, e.g., Milwe v. Cavuoto, 653 F.2d 80, 84 (2d Cir. 1981) 

(reasonable fee should not be denied simply because the jury

awarded substantial damages only in the pendant state law

claim).

Virtually identical to the present was the

situation in our case of Exeter-West Greenwich Regional 

School v. Pontarelli, 788 F.2d 47 (1st Cir. 1986). We said 

there that attorneys' fees were recoverable in a 1983

action where plaintiffs prevailed on a state law issue

arising from the same nucleus of common facts as the federal

claims, provided the latter were substantial enough to

-12-

support federal jurisdiction. Id. at 51-53. There, the  

1983 action alleging that a state education commissioner's

interpretation and application of a state law violated the

federal constitution became moot when the Rhode Island

Supreme Court, on certification from the federal court, ruled

that the commissioner had interpreted the state law

incorrectly. As here, the favorable interpretation of state

law came as a consequence of the 1983 litigation, the

federal court, as part of that proceeding, having certified

the determinative state law question to the state court,

which overturned the commissioner's interpretation. Also as

here, the federal claims in the lawsuit were mooted by the

state law ruling and were never decided. 

In the present case, as in Exeter-West Greenwich, 

the unfavorable interpretation of state law that led

plaintiffs to bring the 1983 action was also certified to

the highest state court. However, the certification was

withdrawn and federal and state authorities agreed to

continue to abide by the district judge's own determination

of state law a determination that had reversed the EOCD's

construction challenged in the 1983 lawsuit. Following

Exeter-West Greenwich, therefore, we see no legal impediment 

to allowing plaintiffs their attorneys' fees under 1988

even though their victory rests on a state, not a federal

-13-

ground. See also Paris v. U.S. Dept. of Housing & Urban 

Dev., 988 F.2d 236, 239-40 

n.7 (1st Cir. 1993) (quoting legislative history of "almost

identical" bill to that which produced 1988, supporting

recovery of fees if the claim for which fees may be awarded

meets the "substantiality" test in Hagans v. Lavine, 415 U.S. 

528 (1974), even though court declines to enter judgment on

that claim, so long as plaintiff prevails on non-fee claim

arising out of a common nucleus of operative fact).

It is, of course, important to our decision that

the dispositive state law question was closely interconnected

with the federal claims. Here, as in Exeter-West Greenwich, 

the federal statutory and constitutional claims made in the 

1983 action were directed at overthrowing an unfavorable

state law ruling. Whether that ruling was itself correct was

a legitimate question for consideration in the 1983 suit:

if, as the district court determined, the EOCD's

interpretation was incorrect, there was no need to resolve

the federal constitutional claim raised by plaintiffs, a fact

noted by the district judge himself as a reason for

certification. Williams, 926 F. Supp. at 12.10 By 

 

10. In the 1994 opinion, the district court stated:
"In view of this Court's interpretation of state
law, there is no occasion to consider the
constitutional question whether the 1992 amendment
to 42 U.S.C. 1437f(r) infringes upon the right to
travel. A court should address constitutional issues
only when a case cannot be resolved on other grounds.

-14-

addressing the state law question first, the federal court

followed the principle that a case should not be decided on

constitutional grounds if other grounds are available. The

certification process enabled the federal court to seek an

authoritative interpretation of state law from the state's

highest court; but this proved unnecessary as the district

court's own announced view of the state law persuaded HUD and

the Authorities to abandon, without more, their previous

construction, and to embrace the one plaintiffs wanted. The

state law question on which the court ruled was thus closely

entwined with the federal claims, the court's addressing of

it being an appropriate judicial action taken within the

context of the 1983 proceeding itself. Being integral to

the latter and to the federal claims therein, it furnished an

unexceptionable basis for finding plaintiffs to be

"prevailing parties" entitled to fees under 1988. We,

therefore, reject the district court's reasoning that

plaintiffs are not entitled to attorneys' fees because their

 

Burton v. United States, 196 U.S. 283, 295, 25 S. 
Ct. 243, 245, 49 L.Ed. 482 (1905). This Court will
confront the constitutional question if the decision
of the Supreme Judicial Court on the issues presented
makes such confrontation necessary and appropriate."
Williams, 871 F. Supp. at 535. 

-15-

success did not derive from the vindication of any

specifically federal right.11

We add that it is well-settled in this circuit that

a 1983 plaintiff seeking attorneys' fees under 1988 may

establish "prevailing party" status under a "catalyst" as

well as a "merits" analysis. See, e.g., Paris, 988 F.2d at 

241. Plaintiffs argue that they win under either approach.

Because the "catalyst" formulation is so plainly dispositive

we need not determine whether plaintiffs sufficiently

prevailed on the merits of their claims to be entitled to

fees under a "merits" analysis also. Their action under 

1983 was at least a "catalyst," which resulted in their

achieving precisely the result they sought by bringing the

action.

In order to qualify for "prevailing party" status

under a catalyst theory, plaintiffs must show "(1) a causal

connection between the litigation and the relief obtained,

and (2) that the fee-target did not act gratuitously."

Guglietti v. Secretary of Health & Human Servs., 900 F.2d 

397, 401 (1st Cir. 1990) (citing to Nadeau v. Helgemoe, 581 

 

11. No question has been raised as to the jurisdictional
sufficiency of the plaintiffs' 1983 action. It is not
suggested that the federal issues alleged in the 1983
action were so wholly unsubstantial or frivolous as to render
that action a jurisdictional nullity. See Hagans v. Lavine, 
415 U.S. 528, 538 (1974); Exeter-West Greenwich, 788 F.2d at 
53. 

-16-

F.2d 275, 280-81 (1st Cir. 1978)). See also Paris, 988 F.2d 

at 241.12 The lawsuit need not be the sole cause of the fee-

target's remedial actions, but it must be a "competent

producing cause of those actions," or play a "provocative

role in the calculus of relief." Guglietti, 900 F.2d at 401. 

See also Paris, 988 F.2d at 241. 

Here there is an undoubted causal connection

between the 1983 lawsuit and the favorable change in

Section 8 portability policy. The district court conceded

that plaintiffs' suit "had some salutary effect." Williams, 

926 F. Supp. at 14. More significantly, it found that HUD

had accepted the court's ruling "as an authoritative

declaration of state law," id. at 12, leading HUD and the 

Authorities to abandon the EOCD's ruling that had led

plaintiffs to seek 1983 relief. The end result cannot,

therefore, be thought to have come about independently of the

underlying litigation, nor can it be said to be unclear that

the lawsuit was significantly responsible for the relief

obtained by the plaintiffs. Compare Paris, 988 F.2d at 241 

("Congress specifically mentioned the case in the legislative

history [of the amendment] as being the 'necessary' force

 

12. Other panels have worded the two-prong test
differently, holding that, to be a catalyst, the lawsuit (1)
must be a "necessary and important factor" in achieving an
end result favorable to the plaintiffs, and (2) must not be
"frivolous, unreasonable, or groundless." See Exeter-West 
Greenwich, 788 F.2d at 52; Coalition For Basic Human Needs v. 
King, 691 F.2d 597, 599 (1st Cir. 1982). 

-17-

behind its enactment.") with Guglietti, 900 F.2d at 402 

("[I]t seems naive in a run-of-the-mine case like this one to

credit the change in the law to the [plaintiff's] appeal.").

Before this action was filed, both HUD and the

Authorities had taken a firm position towards the plaintiffs'

plight: for the first twelve months of the Section 8

tenancy, the plaintiffs were only entitled to housing located

within the municipal boundaries of the public housing

Authority issuing their Section 8 certificates. It was only

in the wake of the district court's announced decision to the

contrary that HUD reversed this policy by notifying all

Massachusetts public housing authorities that their

"jurisdiction," for purposes of Section 8, extended to any

community within the Commonwealth, and by granting the

plaintiffs full portability rights under 1437f(r)(1).

There is no suggestion that without the filing of the

underlying action, and the proceedings spawned by it, this

change in Section 8 portability policy would have occurred.

Plaintiffs' lawsuit was not only a "necessary and important

factor" in achieving the desired result, it seems to have

been the key factor.

While acknowledging that the plaintiffs got what

they wanted in their lawsuit, the Authorities attribute this

"practical" success to HUD's "voluntary" agreement to change

-18-

its Section 8 portability policy, a "gratuitous gesture" by

the fee-target. But for reasons already stated, there is no

reasonable way that HUD's and the defendant Authorities'

change of heart can be disassociated from the lawsuit. We

accept that HUD and the Authorities were cooperative once the

court had expressed its interpretation of state law. They

might have continued to fight. One may applaud their good

sense and good will. Still, a ruling even as to state law by

an experienced district judge is a significant matter, as

these events showed, and the court's ruling was backed by the

pending certification to the highest state court. HUD and

the Authorities would hardly have accepted the ruling had

they doubted its correctness. The filing of this case

triggered a process before the district court (i.e. the

submission of papers, the holding of hearings, the

presentation of arguments, etc.) that led to the district

court's decision. It was in response to that decision that

HUD, and the Authorities, changed their Section 8 portability

policy in Massachusetts. Plaintiffs are thus prevailing

parties as that term is used in 42 U.S.C. 1988.

IV. IV.

Having found that the plaintiffs are "prevailing

parties" for purposes of 1988, we now turn to the second

issue presented for review, to wit, whether there were

"special circumstances" in this case meriting the district

-19-

court's denial of attorneys' fees on discretionary grounds.

While 1988 provides that attorneys' fees may be granted to

the prevailing party in the district court's discretion, both

the legislative history and case law since enactment of 

1988 indicate that prevailing parties may not ordinarily be

denied fees except in special circumstances making the award

unjust. The district court's "broad discretion" to award

fees to "prevailing parties" under 1988, see Sargeant v. 

Sharp, 579 F.2d 645, 647 (1st Cir. 1978), must be guided by 

the statutory presumption that fees should be awarded to

successful plaintiffs absent unusual situations. See 

generally S. Rep. No. 94-1011 (1976), reprinted in 1976 

U.S.C.C.A.N. 5908. A prevailing plaintiff, the Supreme Court

has said, "should ordinarily recover an attorney's fee unless

special circumstances would render such an award unjust."

Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation 

omitted) (footnote omitted); Newman v. Piggie Park Enters. 

Inc., 390 U.S. 400, 402 (1968). See also David v. Travisono, 

621 F.2d 464, 468 (1st Cir. 1980) (citations omitted);

Sargeant, 579 F.2d at 647 (citations omitted). With this in 

mind, we review for abuse of discretion the district court's

discretionary determination, asking whether the court

identified appropriate "special circumstances" that justify

the denial of fees.

-20-

In this circuit, "special circumstances" warranting

a denial of attorneys' fees under 1988 have been found if

there is a showing of "outrageous" or "inexcusable" conduct

by plaintiffs (or plaintiffs' counsel) during the litigation

of the case. Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 

1991). In Lewis, this court reversed an award of attorneys' 

fees noting that the plaintiff had "failed entirely, or

largely, in everything" and that her lawyers' subsequent

failure to adjust their billing accordingly was, thus,

"inexcusable." Id. at 955-56. In a case where a fee award 

was affirmed, but its amount reduced, this court reiterated

that, under Lewis, "special circumstances" exist where the 

fee application reflects "(1) no 'good faith' effort to

exclude excessive, redundant, or otherwise unnecessary hours,

(2) no reduction for time spent on unsuccessful claims, and

(3) no allowance for the limited 'degree of success' achieved

by the plaintiff." Domegan, 972 F.2d at 419 (citing to 

Lewis, 944 F.2d at 957-58). In the instant case, there is no 

indication from the record below that any of the parties (or

their lawyers) engaged in "outrageous" or "inexcusable"

conduct of this nature, nor does the court suggest as much.

Compare Lewis, 944 F.2d at 955-56, with, e.g., Domegan, 972 

F.2d at 419-20.

The district court seems rather to have employed a

"balancing of the equities" test not accepted in this

-21-

circuit, see Stefan v. Laurenitis, 889 F.2d 363, 370-71 (1st 

Cir. 1989), in finding "special circumstances" in the instant

case. The district court first found that the defendants in

this case had acted in good faith.13 The district court went

on to acknowledge that "good faith alone on the part of the

Authorities is insufficient to deny the Williams Plaintiffs

attorneys' fees . . .", Williams, 926 F. Supp. at 14 

(citation omitted), the rule in this and apparently every

other circuit that has considered the issue. Indeed, in the

First Circuit,

"[T]he good faith of defendants is not a
controlling factor in determining whether
or not plaintiffs merit an award...This
conforms to the policy underlying the
award of attorney's fees in civil rights
cases...[I]t makes no difference whether
plaintiff's suit yields favorable out of
court results because a good faith
defendant is brought to understand the
illegality of his conduct and alters his
behavior or because an unrepentant
defendant grudgingly signs a consent
decree to avoid continued litigation
expenses in a lost cause. The key issue 
is the provocative role of the 
plaintiff's lawsuit, not the motivations 
of the defendant." 

 

13. The district court stated:
"In interpreting their jurisdiction as prohibiting
their contracting for housing outside of their town
boundaries, the Authorities acted in good faith and appear to
have made significant efforts to assist the Williams
Plaintiffs in securing housing consistent with their
interpretation of the restriction on their jurisdiction."
Williams, 926 F. Supp. at 13-14. 

-22-

Nadeau, 581 F.2d at 280 (citations omitted) (emphasis added). 

See also Burke v. Guiney, 700 F.2d 767, 772 (1st Cir. 1983) 

("'Good faith by itself is not a special circumstance

justifying a denial of attorney's fees.'") (quoting

Teitelbaum v. Sorenson, 648 F.2d 1248, 1250 (9th Cir. 1981)). 

Although the defendants' good faith, in and of

itself, was not enough to justify the denial of attorneys'

fees, the district court found "something more" in this case,

Williams, 926 F. Supp. at 14, to wit, the defendants' good 

faith reliance on the EOCD's interpretation of Massachusetts

law.14 The circuits are in agreement, however, that

defendants' good faith reliance even on settled law (which

was scarcely the case here) is not a "special circumstance"

 

14. The Authorities suggest that the district court also
took into account what they regard as the plaintiffs' limited
success in the underlying litigation in denying an award of
attorneys' fees under 1988. It is true that, towards the
end of its opinion, the district court notes:
"[I]n this case a balancing of the equities weighs
against the award of attorney's fees. This is particularly
so given the relatively arcane point of state law upon which
the Williams Plaintiffs prevailed." Williams, 926 F. Supp. 
at 14.
Whether the district court meant to identify another
"special circumstance" we need not decide here, as it is
well-established that ordinarily "the degree of the
plaintiff's success in relation to the other goals of the
lawsuit is a factor critical to the determination of the size
of a reasonable fee, not to eligibility for a fee award at
all." Texas State Teachers Ass'n v. Garland Indep. Sch. 
Dist., 489 U.S. 782, 790 (1989). We add that where, as here, 
the goal of the 1983 action was to alter the earlier state
law ruling, and where that occurred, we have difficulty
understanding how plaintiffs' success can be termed partial.

-23-

warranting a denial of attorneys' fees under 1988. In

Coalition For Basic Human Needs v. King, 691 F.2d 597, 602 

(1st Cir. 1982), where appellees claimed that "state law

required them under threat of criminal penalties to

deny" plaintiffs the Aid to Families with Dependent Children

("AFDC") payments they sought, this court said:

"If the appellees mean this fact to show
that they acted in good faith that
they felt obliged to withhold the funds
and obliged to contest the Coalition's
suit we agree that they may have had
good-faith reasons for their acts, but
that is no reason to deny the Coalition
attorney's fees. The Civil Rights
Attorney's Fees Awards Act is not meant
as a 'punishment' for 'bad' defendants
who resist plaintiffs' claims in bad
faith. Rather, it is meant to compensate
civil rights attorneys who bring civil
rights cases and win them. The need for
such law suits, and such payment, may
well be greatest in just those instances
in which lawyers and officials, in
totally good faith, have opposing views
about what state and federal law requires
of them."

The underlying theme in all of these "good faith" cases,

then, is that the analysis under 1988 must focus, not on

the defendants' conduct, but on the harm suffered by the

plaintiffs and the relief obtained through their lawsuit.

Having done so, we are unable to find that any of the

circumstances identified by the district court meet the

criteria for "special circumstances" adequate to deny fees

under the law as it has developed. We hold, therefore, that

-24-

the district court exceeded its discretion in denying any

fees on the discretionary basis set forth in its opinion.

V. V.

For all of the foregoing reasons, we vacate the

district court's order denying the plaintiffs' motion for

attorneys' fees under 1988. We remand the case to the

district court for consideration of the fee application in a

manner not inconsistent with this opinion.

It is so ordered. Costs for appellant. 

-25-