USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1050

 JANET G. STANTON, ET AL.,

 Plaintiffs, Appellants,

 v.

 SOUTHERN BERKSHIRE REGIONAL SCHOOL DISTRICT, ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge. 
 
 
 
 Alan Jay Rom with whom Law Office of Sherwin L. Kantrovitz,
P.C. was on brief for appellants. 
 Charles J. Ferris for appellees Town of Egremont and its Board
of Selectmen.
 John F. Rogers with whom Cain, Hibbard, Myers & Cook, PC was
on brief for appellees Town of Alford, Clyde S. Brown, Charles F.
Ketchen and Raymond E. Wilcox, in their capacity as Selectmen of
the Town of Alford.

December 14, 1999

 
 BOUDIN, Circuit Judge. This appeal, limited to the
narrow question of counsel fees, has its roots in events long ago. 
In 1953, four Massachusetts towns in the Southern Berkshire area of
the state formed a regional school district, and in 1954, a fifth
town joined. The five towns are Sheffield, Monterey, Egremont, New
Marlborough and Alford. The district, empowered to govern public
schools within the region, was formed pursuant to state law, see
1951 Mass Acts c. 638, and was approved by the voters in each town.
 At all times, the district has been governed by a ten
member committee with a fixed apportionment of seats among the
towns. Sheffield has four seats, Egremont and New Marlborough have
two each, and Alford and Monterey have one each. Every committee
member's vote is equally weighted, so Sheffield has 40 percent of
the voting power, even though its population has at times
represented close to half of the district's total population. From
1954 until very recently, each town's members on the committee were
chosen by popular vote of the residents of that town. 
 In 1986, this court upheld a challenge to another,
similarly structured Massachusetts school district based on the
Supreme Court's one person, one vote jurisprudence. See Kelleher
v. Southeastern Reg'l Vocational Technical High Sch. Dist., 806
F.2d 9, 10-13 (1st Cir. 1986). The court held that the
substantial discrepancy in voter power as among the respective
towns was unlawful but could be cured in various ways, including
resort to district-wide, at-large elections; weighting committee
member votes according to the population that they represent;
keying the number of locally elected members from each town to
population; or eliminating direct popular elections and having
local officials from each town appoint district members. See id.
at 13 n.17.
 A few months later, state officials advised all districts
of the Kelleher decision and urged them to examine their own
situations; even if popularly elected, a district's governance
structure might or might not conform, depending on the deviation
between each town's population and the voting power of its own
members on the district committee. For whatever reason, the
Southern Berkshire district involved in our case did nothing to
alter its structure. Then, in 1993, it solicited an opinion from
state officials and was told that its own district failed to comply
with Kelleher. A subcommittee, consisting of representatives from
all five towns, was set up to consider reforms.
 For the next three years, the subcommittee considered
various schemes but failed to reach an agreement. Sheffield wanted
a plan that would retain local election of committee members but
that would increase Sheffield's voting power on the district
committee to conform to Sheffield's population share. The other
towns preferred either district wide, at-large voting (which would
increase Sheffield's power) or the appointment of the district
committee members by elected bodies in each town (which would moot
the equal protection issue)--both solutions that Sheffield opposed.
 Dissatisfied with the status quo, the Town of Sheffield
and a group of its residents (including members of the town's board
of selectmen) brought the present suit in 1996 against the district
and the other four towns. The suit, brought in federal district
court under 42 U.S.C. 1983, sought a declaration that the present
scheme was unconstitutional and injunctive relief to prevent new
elections under the present regime and to require a new court-
approved structure for elections. The complaint also sought
attorney's fees for the plaintiffs under 42 U.S.C. 1988.
 Sheffield quickly moved for and received partial summary
judgment from the district court declaring the existing scheme
unconstitutional. The defendants did not dispute that the scheme
was unconstitutional but questioned the need for a declaration
since the parties had been working on that assumption in seeking to
negotiate a solution. Just before this ruling, Egremont proposed
a compromise--that the present committee structure be retained but
that the legal infirmity be remedied by having a local elected
entity in each town select the town's committee members in place of
popular elections. Sheffield rejected the proposal.
 In early 1998, the parties reached agreement without
further litigation, and the district court approved the settlement. 
The final scheme was that earlier urged by Egremont--retaining the
present committee structure and allocation of voting power but
eliminating direct popular election of the committee--with one
variation: Egremont had initially proposed that local popularly
elected school boards select the committee members, while the final
scheme let the local board of selectmen choose the committee
members for the town. Thus Sheffield retained its original four
seats and 40 percent of the voting power on the committee, but its
members were now chosen without popular election.
 Some might think this an odd triumph for equal
protection, possibly raising a doubt or two about the Supreme Court
jurisprudence underpinning our decision in Kelleher, cf. id. at 13
(Campbell, C.J., concurring), but that is not our concern. Rather,
the present appeal grows out of the plaintiffs' post-settlement
request for attorney's fees under section 1988. The district court
denied that request on the ground that Sheffield was not a
"prevailing party," an explicit condition of such an award under
the statute. See 42 U.S.C. 1988(b) ("[T]he court, in its
discretion, may allow the prevailing party . . . a reasonable
attorney's fee as part of the costs . . . ."). It is this ruling
that Sheffield now seeks to overturn.
 The usual "American rule" is that parties bear their own
counsel fees, see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,
421 U.S. 240, 247 (1975), but Congress may provide otherwise. 
Congress has sometimes directed that a prevailing plaintiff "shall"
recover a reasonable attorney's fee, e.g., 15 U.S.C. 15(a)
(antitrust cases); by contrast, in section 1983 actions, Congress
has said that the court "may" make such an award to a prevailing
party "in its discretion." But the Supreme Court has read "may" to
mean "must," save for rare cases in which "special circumstances"
would render an award unjust. Blanchard v. Bergeron, 489 U.S. 87,
89 n.1 (1989); Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).
 Perhaps in compensation, the Supreme Court has construed
the term "prevailing party" in a more flexible fashion. For
example, it has said that "a technical victory may be so
insignificant . . . as to be insufficient to support prevailing
party status." Texas State Teacher's Ass'n v. Garland Indep. Sch.
Dist., 489 U.S. 782, 792 (1989). More recently, it ruled that a
plaintiff who wins only nominal damages can "prevail" yet be
entitled to no fee at all. Farrar v. Hobby, 506 U.S. 103, 113-15
(1992). And it has described the concept of "prevailing party" in
phrases so general as to leave a good deal of latitude. E.g., id.
at 111-12 ("[A] plaintiff 'prevails' when actual relief on the
merits of his claim materially alters the legal relationship
between the parties by modifying the defendant's behavior in a way
that directly benefits the plaintiff.").
 We have taken the Supreme Court's cases to mean that,
absent unusual circumstances, the plaintiff is to be awarded
attorney's fees in cases under section 1983 where it wins
significant practical relief favorable to its position. E.g.,
Pearson v. Fair, 980 F.2d 37, 43-44 (1st Cir. 1992). Our cases
have also recognized that a plaintiff may achieve such ends through
litigation, and deserve attorney's fees, even without a formal
victory; for example, the so-called "catalyst" theory might justify
an award where the defendant abandoned an unlawful practice after
the case was brought, as a direct result of the lawsuit, but
without the need for a decree. See id. at 43-45. Again, the
inquiry is a practical one.
 Because the test of "prevailing party" is both general
and practical, we have relied heavily on the informed judgment of
the district courts in applying it to the widely varying facts that
are presented. So long as the legal rules are properly understood,
a district court's application of them to individual circumstances
is normally upheld, if there is no abuse of discretion. See Paris
v. HUD, 988 F.2d 236, 238-39 (1st Cir. 1993); McDonald v. HHS, 884
F.2d 1468, 1473-74 (1st Cir. 1989). This is one of many instances
in which reasonableness is the touchstone, reflecting the trial
court's greater familiarity with the details of the case and the
absence of any special need for de novo review.
 Against this background, we readily sustain the district
court's denial of attorney's fees. Far from obtaining their basic
objective in this case--increased power on the committee--the
Sheffield plaintiffs got exactly the opposite solution: their
votes on the committee remain four out of ten or 40 percent of the
whole. True, popular election of members is gone; but this can
hardly be described as a victory "for" Sheffield since its own
earlier demand had been to retain popular election (while
increasing Sheffield's share of the voting power on the committee).
 Sheffield describes its law suit as a "catalyst" for the
change that occurred. Cf. Pearson, 980 F.2d at 43. Whether this
is so in fact could fairly be debated since Sheffield was offered
pretty much the same outcome soon after the lawsuit was commenced,
namely, the present committee structure and apportionment of votes
but a switch from popular election to appointment of committee
members. Sheffield says that the earlier proposal would have had
elected school boards appoint the committee members and it wanted
at least to ensure the power of its selectmen to choose them; but
this choice has nothing to do with protecting the one person, one
vote principle for voters.
 In all events, the decisive question is not whether
Sheffield's lawsuit was a catalyst but whether it was a catalyst
for an outcome favorable to Sheffield. Under the catalyst theory--
itself simply a practical test for discerning victory--a plaintiff
may achieve its victory in a lawsuit even if there is no award or
injunction, so long as the lawsuit effectively achieved a favorable
result sought by the plaintiff. See Pearson, 980 F.2d at 43-45. 
The problem here is that, by any realistic measure, the result
achieved was not that sought by Sheffield.
 Nor does it help Sheffield's claim to point to the
interim declaratory ruling by the district court that the
preexisting scheme violated the one person, one vote principle. No
one in the litigation appears seriously to have doubted that the
existing regime had to be changed; indeed, the parties had been
negotiating on this premise well before the lawsuit began. In a
number of voting rights cases, the courts have declined to award
attorney's fees where efforts to amend the unlawful scheme began
prior to the filing of suit by the plaintiff. A party is not
entitled to attorney's fees when he obtains relief through
litigation that he would have obtained anyway in the absence of
bringing a lawsuit. See New Hampshire v. Adams, 159 F.3d 680, 687
(1st Cir. 1998).
 In any event, even if the declaratory ruling sped up the
negotiations, which may or may not be so, the question remains
whether the Sheffield plaintiffs ultimately prevailed in obtaining
relief in their favor, which they did not. As for town voters
throughout the district, the main outcome of the case is that they
no longer have any direct vote for committee members. This is
hardly a compelling case for awarding attorney's fees to a
plaintiff.
 Affirmed.